295 P.2d 259

The STATE of Idaho, Plaintiff-Respondent,

v.

John D. McCALLUM, Defendant-Appellant.

No. 8340.

Supreme Court of Idaho.

March 28, 1956.

Rehearing Denied April 16, 1956.

Rayborn, Rayborn & Kramer, Lloyd J. Walker, Twin Falls, for appellant.

Graydon W. Smith, Atty. Gen., J. R. Smead, Asst. Atty. Gen., James M. Cunningham, Pros. Atty., Twin Falls, for respondent.

ANDERSON, Justice.

The forepart of August, 1954, H. C. Schurger and his wife received a circular from Olmac Manufacturing Co., 411 Weatherly Building, Portland, Oregon, pertaining to shingles and siding. It had a business reply card attached, which they returned. August 9, 1954, which was about three days after the card had been returned, John D. McCallum, defendant and appellant, contacted the Schurgers in Twin Falls and showed them samples of shingles. He told them that he was the president and manager of Olmac Manufacturing Co.; that he and 15 other men had formed the company and made the word "Olmac" out of their names, and that they were actively engaged in manufacturing aluminum shingles and roofing supplies in the Weatherly Building in Portland, Oregon; that he sold direct from the factory and could save the Schurgers the commission which the dealer would ordinarily charge; that he was looking for dealers; that his price was less than the price of aluminum shingles manufactured by the Olmac Manufacturing Co. if sold through retail outlets. Appellant stated the shingles would arrive in about three days after an order was placed for them.

Relying on the statements of the appellant, the Schurgers agreed to purchase shingles of the type of one of his samples, and paid $745.80 to appellant by check. It being after dark, they estimated the size of the roof, and appellant stated he would measure it the next morning. However, he failed to do so then or at any time thereafter. August 10, 1954, appellant took the check to the bank on which it was drawn in Twin Falls, and had a cashier's check drawn in place thereof.

The Schurgers did not receive the shingles nor hear from appellant, so on August 23, 1954, they went to the Rogerson Hotel, where they knew he had stayed when he last saw them, and inquired for him. He was not there, but a hotel employee stated he would let them know if McCallum should return. August 29, 1954, the Schurgers were informed of McCallum's return, and they contacted appellant at the hotel. He explained that it was an oversight that the shingles had not been sent, and that he had newer samples, which he showed them later that day at their home, and the Schurgers agreed to take a different shingle which was the same price as the shingles originally ordered.

September 4, 1954, Schurger sent a telegram and a letter to appellant canceling the order. He received neither a return of his money, the shingles, nor a reply, until December 14, 1954, when appellant wrote that he was withholding 25 per cent of the purchase price, leaving $555 balance to be returned in due course. This was the only letter of several written by the complaining witness that the appellant answered, and it was answered after the appellant had been arrested on the present charge. None of their money was ever returned, nor were the shingles ordered ever delivered. How-

ever, a month or six weeks before the trial, which was commenced May 31, 1955, one square of shingles was sent to the Schurgers, and a warehouse notified them that there was merchandise there for them from Alum Life Mfg. Corporation of Spokane, Washington. The Schurgers refused to accept this merchandise, and testified that the shingles delivered were inferior to those ordered, those ordered weighing 50 pounds to the square, those delivered only 35.

The appellant denied the making of any false or fraudulent statements, or any statements with the intent to defraud.

Among the witnesses produced by the state was Della Ulrich, who testified in substance that December 2, 1953, appellant had called on her and her husband, now deceased, in response to a post card they had returned from a circular sent them by Olmac Manufacturing Co. Appellant told them he was representing this factory. They entered into a contract to purchase $1,380 worth of shingles, and paid him $500.

Although he promised to deliver the shingles by Christmas, they heard nothing from him until December 27, 1953, when he wrote that he knew they were concerned about their order. He wrote on Olmac Manufacturing Co. stationery that the company had completed the enameling the previous Wednesday, but did not think that the color was satisfactory, so others were being prepared and would be ready in a few days.

February 13, 1954, appellant again wrote the Ulrichs on company stationery that the company had new shingles at the same price, which he thought he should show them before sending the others. There was other correspondence, and finally the Ulrichs sent a telegram to appellant, and on April 8 and 9 went to Portland and tried to find the Olmac Manufacturing Co., and discovered that there was no such company at the Weatherly Building or elsewhere that they could find.

They canceled their contract, but heard nothing from the defendant until December 14, 1954, when he wrote that he was deducting 25 per cent of the $1,380 order, on which $500 was paid, leaving $155 balance due to be returned in due course. It was never returned, nor were any shingles received.

B. M. Austin of Klamath Falls, Oregon, testified that under similar circumstances as those heretofore mentioned he had entered into a contract with appellant September 14, 1954, in the amount of $1,450 for shingles, and had paid $100; that appellant promised prompt delivery, as Austin wanted his roof on before bad weather set in. He received neither the shingles nor a refund of his money.

The assistant manager of the Portland Better Business Bureau testified that he investigated Olmac Manufacturing Co. because of complaints from 1952 until shortly before the trial, and that to his knowledge no such company had ever been engaged in the manufacture of shingles and roofing supplies in Portland, Oregon; that

as a result of his investigation he heard appellant state he had never been so engaged, but that he contemplated doing so at some time.

A post office inspector testified that he conducted an investigation of appellant in connection with the alleged use of the mails to defraud, but he was unable to find an Olmac Manufacturing factory, and when he later contacted appellant, he was informed that neither the appellant nor the Olmac Manufacturing Co. had a factory, and appellant stated that he would settle the complaints.

Appellant denied that he told Schurger that the Olmac Manufacuring Co. was actively engaged in the manufacture of shingles and roofing supplies, or that he made any false representations. He testified that he purchased such supplies from manufacturers in Portland, Oregon, and Spokane, Washington.

At the close of the state's evidence, appellant moved the court

"* * * to instruct the jury under the statute to return a verdict of not guilty * * *."

The motion was denied by the court. At the conclusion of all the evidence it was renewed in slightly different wording and again denied. Thereafter the defendant was convicted, and at the time fixed for sentence a motion for a pre-sentence investigation was made and denied.

Appellant contends in his first three assignments of error that the court erred in not granting a directed verdict of acquittal for him, contending that the representations were only "seller's talk," that the representations alleged in the information were immaterial to the agreement signed by the parties, and that the shingles were not misrepresented.

Idaho Code § 19–2123 provides:

"Advisory instruction to acquit.— If, at any time after the evidence on either side is closed, the court deems it insufficient to warrant a conviction, it must advise the jury to acquit the defendant. But the jury are not bound by the advice."

In State v. Conner, 59 Idaho 695, 89 P. 2d 197, the defendant had been convicted of maintaining a liquor nuisance. The trial court had overruled a motion for an advisory instruction to acquit. In affirming the conviction, the court quoted I.C.A. § 19–2023 (now I.C. § 19–2123) and said, 59 Idaho at page 704, 89 P.2d at page 201:

"The giving, or refusing to give, an instruction advising the jury to acquit a defendant in a criminal case is discretionary."

Such a ruling has been held not to be reviewable on appeal in the cases of State v. Miller, 52 Idaho 33, 37, 10 P.2d 955; State v. McDermott, 52 Idaho 602, 614, 17 P.2d 343; State v. Emory, 55 Idaho 649, 653, 46 P.2d 67; State v. Richardson, 56 Idaho 150, 157, 50 P.2d 1012; State v.

Stevens, 48 Idaho 335, 349, 282 P. 93; State v. Mundell, 66 Idaho 339, 344, 158 P.2d 799; State v. Gailey, 69 Idaho 146, 150–151, 204 P.2d 254; State v. Dickens, 69 Idaho 497, 498, 210 P.2d 384.

In the case of State v. McClurg, 50 Idaho 762, at page 797, 300 P. 898, at page 911, this court stated:

"* * * The motion to peremptorily instruct the jury to acquit is not known to our practice. Where the evidence is insufficient, the court may advise the jury to acquit the defendant (C.S. § 8963), although this advice is not binding on the jury who must be so instructed. However, the refusal to give the instruction advising the jury to acquit is not reversible error, and is not reviewable in this court."

However, in the case of State v. McCarty, 47 Idaho 117, at page 118, 272 P. 695, in discussing what is now I.C. § 19-2123, this court stated:

"At common law the trial judge had the same right to give a peremptory instruction in a criminal proceeding that he had in a civil action. Commonwealth v. Murphy [33 Ky.Law Rep. 141] 109 S.W. 353. The effect of C.S. § 8963, is to limit this power, not to abolish it. Where there is no evidence on which to base a verdict of guilty, it is still the right and duty of the trial court, upon proper motion, to direct an acquittal. * * * Where, however, the evidence is merely insufficient, the

court must then advise the jury to acquit, which advice the jury is not bound to follow.

"The above holding does not conflict with State v. Peck, 14 Idaho 712, 95 P. 515, and State v. Downing, 23 Idaho 540, 130 P. 461, where the question considered was not the total absence of evidence, but the insufficiency of the evidence, under C.S. § 8963."

In State v. Adair, 70 Idaho 486, 487, 222 P.2d 741, the appellant sought reversal on the ground there was no evidence showing that he was the party who sold the liquor and that, consequently, the court should have directed an absolute acquittal in accordance with State v. McCarty, 47 Idaho 117, 272 P. 695. The court stated, 70 Idaho at page 488, 222 P.2d 741:

"There thus being a total lack of evidence to identify the defendant as the party who sold the liquor, People v. Coyodo, 40 Cal. 586; State v. Sullivan, 34 Idaho 68 at [page] 74, 199 P. 647, 17 A.L.R. 902; and State v. McCarty, supra, the court should have directed an absolute acquittal."

In the case now before us, there was some evidence upon which to base a verdict of guilty. Therefore the rule in the McCarty and Adair cases does not apply; and under the rule set forth in the other above-cited authorities, the giving or refusing to give an advisory instruction to acquit is not reviewable on appeal. How-

ever, in passing, it is noted that the evidence in the present case is sufficient to sustain the verdict.

■ The elements necessary to constitute the crime of obtaining money or property under false pretenses are as follows: (1) There must be an intent to defraud; (2) there must be an actual fraud committed; (3) false pretenses must be used for the purpose of perpetrating the fraud; and (4) the fraud must be accomplished by means of the false pretenses made use of for the purpose, viz., they must be the cause which induced the owner to part with his property. State v. Whitney, 43 Idaho 745, 750, 254 P. 525; State v. Barr, 63 Idaho 59, 66, 117 P.2d 282; State v. So, 71 Idaho 324, 328, 231 P.2d 734. The prosecution established each of these elements in the present case.

The appellant quotes at length from the case of People v. Morphy, 100 Cal. 84, 34 P. 623. The facts in that case and the one now before us are different in that in the Morphy case the merchandise contracted for was actually delivered, and it did not appear

"* * * that the goods were not all that they were represented to be, as to character, quality, and quantity, or that they were not sold at a fair price." 34 P. at page 623.

In the present case, the evidence, although conflicting, can reasonably be construed as disclosing that appellant knowingly made false representations with the intent and expectation that the Schurgers would act upon them to their injury, and that they did so act. Several statements made by appellant were more than mere "seller's talk": For example, the false statement that Olmac Manufacturing Co. was manufacturing shingles, the false statement that he could therefore sell direct cheaper and save the buyer a commission, that appellant was looking for dealers, etc. In addition, the shingles delivered were of inferior quality and not as they were represented to be.

■ Although several false representations are alleged, only one need be proven if the other elements of the crime are also proven. We are of the opinion that this was done, and that the evidence in this case was sufficient to support the verdict and judgment of conviction. Although appellant contends the evidence was insufficient to show that the Schurgers were actually defrauded, the evidence discloses they paid $745.80, no part of which was returned, nor was merchandise sent of the quality they purchased. About all they received was expensive experience.

■ Appellant alleges the court erred in giving instruction No. 10. This instruction is as follows:

"It is not a necessary element of the crime of obtaining money by false pretense that the person against whom the offense is directed *permanently* be deprived of his money or property as a

final outcome of the chain of events involved. If the crime, as defined in these instructions, was committed by the defendant, he is not to be acquitted or excused because in the end the complaining witness suffered no property loss, if such be the case." (Emphasis added.)

The instruction is not erroneous, as it is not necessary that the person against whom the offense is directed to be permanently deprived of his property. 22 Am.Jur., False Pretenses, sec. 32, p. 463.

■ Appellant contends that instruction No. 10 is contradicted by instruction No. 6(4), which part of said instruction 6 reads:

"That the representations were made by the defendant designedly for the purpose of deceiving and defrauding said H. C. Schurger, that is, of inducing the said H. C. Schurger, voluntarily and without consideration, to pay money to the defendant."

and No. 6(8), which reads:

"That as a result of such representations, reliance and payment, the said H. C. Schurger was defrauded * * *."

It is to be noted that in instruction No. 6 the court is setting out the material allegations of the information, so as to advise the jury with what appellant was charged. The court thereafter correctly states that each and every material allegation in the information has to be proven beyond a reasonable doubt.

The court in instruction No. 7 then gave the pertinent parts of the false pretenses statute, I.C. § 19–2116, as to the sufficiency of evidence requirements in cases of this nature.

Instruction No. 11 cautioned the jury that a mere false representation was not sufficient unless relied upon by the injured party to his injury. This instruction was taken verbatim from the case of State v. Stratford, 55 Idaho 65, 73(6), 37 P.2d 681, wherein it was approved.

Instruction No. 23 instructed the jury to consider all of the instructions together, and not to single out a particular one and base the verdict upon it alone. Parts of instructions cannot be taken out of context and used to get a meaning not properly therein.

We fail to find any reversible error in the instructions.

■ Appellant assigns as error the admission of the testimony of Mrs. Ulrich and Mr. Austin, and exhibits H to M, both inclusive, claiming that they were separate matters, had no connection with this case, and were not a part of a scheme or plan of the defendant to commit the offense herein charged. It is noted that the Ulrich transaction was nine months prior to the Schurgers', but the same type circular was used, and other facts and circumstances surrounding it were similar. In fact, appellant sent a letter to both the Schurgers and the Ulrichs as would-be purchasers on December 14, 1954, stating that he was de-

ducting 25 per cent of the full amount of the contract from the amount each had paid, and in the last paragraph of each letter stating "balance to be returned in due course." No payment was ever made. The Austin transaction commenced in September, 1954, under similar circumstances to the other two. No error was committed in the admission of the testimony of either Mrs. Ulrich or Mr. Austin.

In the case of State **v.** Stratford, 55 Idaho 65, 72, 37 P.2d 681, 684, this court stated:

" 'The general rule is well established * * * that upon trial for felony the prosecution will not be permitted to give evidence tending to establish the guilt of defendant of another distinct and independent crime. But this rule has its exceptions; and * * * this court has held that evidence of similar transactions before the one charged are admissible to prove intent. * * * Does this exception also permit the introduction of evidence of subsequent similar acts, occurring shortly after the one charged and a part of the same system or scheme for the like purpose of proving intent? We think that upon reason and authority this question must be answered in the affirmative. The underlying reason for the exception lies in the fact that a man may be honestly mistaken, have no fraudulent intent if the transaction stands alone, is single, but that the probabilities of an honest mistake diminish as the number of similar transactions indicating a scheme or system increase. Thus a man may honestly offer a counterfeit bill, and the one transaction, standing alone, has little force in proving guilty knowledge, in proving intent to defraud. But, if he successively, offers 5 or 25 counterfeit bills, as such offers increase in number the probabilities of an honest mistake diminish, and the probabilities of guilty knowledge, of intent to cheat, increase.' "

See also State **v.** Proud, 74 Idaho 429, 437, 262 P.2d 1016; State **v.** Dunn, 60 Idaho 568, 575, 94 P.2d 779.

■ The last error assigned by appellant is that the court erred in denying a request for a pre-sentence investigation. All that the record shows in this regard is the court minute of June 17, 1955, wherein it shows that appellant's counsel withdrew and other counsel were entered for him,

"* * * Whereupon the Defendant moves the Court for a pre-sentence investigation, which motion was by the Court denied."

Appellant relies upon the case of State v. Mitchell, 77 Idaho ——, 289 P.2d 315. The facts in that case and this one are entirely different. In that case, at the time fixed for the pronouncement of sentence, appellant made a request and a motion for leniency and the withholding or suspension of judgment, and asked that the court place

appellant on probation. No such action was taken in the present matter.

Idaho Code §§ 19–2601 and 20–220 forbid the granting of probation or the suspension of sentence without a written report of investigation when a probation or parole officer is available to the court. No request for withholding or suspension of sentence was made, and the trial court did not err in proceeding without such an investigation, as neither probation nor parole was granted or contemplated.

Judgment affirmed.

TAYLOR, C. J., and KEETON, POR-TER, and SMITH, JJ., concur.