775 P.2d 1233
**STATE of Idaho, Plaintiff–Respondent,**

v.

**Miguel Acuna ROMERO,
Defendant–Appellant.**

No. 17706.

Supreme Court of Idaho.

June 16, 1989.

**392**

Jarman & Tranmer, Pocatello, for defendant-appellant. Ronald J. Jarman argued.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen. (argued), Boise, for plaintiff-respondent.

BISTLINE, Justice.

By order of this Court, we decided to review the decision of the Court of Appeals in this case, *State v. Romero*, 114 Idaho 92, 753 P.2d 828 (1988). The Court of Appeals summarized the facts as follows:

> Miguel Acuna Romero was convicted of voluntary manslaughter following a jury trial. The district court sentenced him to a determinate period of fifteen years in the custody of the Board of Correction.
>
> A review of the facts is appropriate. On October 29, 1986, shortly after 11:00 p.m., Robert Thompson was crossing a parking lot in Pocatello, Idaho. Romero and a co-defendant, Jerry Griffith, and several other youths were nearby. Thompson was wearing a Halloween mask and made a gesture as he passed the group. Griffith entered into a confrontation with Thompson. Romero soon joined Griffith in this direct confrontation. During the course of this fight, Griffith verbally baited Thompson and then struck him. As the fight continued, Thompson struck Romero. Thereafter, Thompson attempted to retreat but Romero and Griffith continued to press the attack. Eventually Romero and Griffith, acting in concert, knocked Thompson to the ground. From that point on, both Romero and Griffith delivered multiple powerful shoe and boot blows to Thompson's head. These blows were of sufficient force to cause Thompson's death.

*State v. Romero*, 114 Idaho at 93, 753 P.2d at 829.

Romero was tried on the charge of *first* degree murder requiring the prosecution to prove a "deliberate and premeditated killing." *See* I.C. § 18–4004.[1] However, after a five day trial the jury returned a guilty

---

1. The crime of voluntary manslaughter is defined as an unlawful killing "upon a sudden quarrel or heat of passion." I.C. § 18–4006. The jury's decision to reject the prosecutor's demand for a first degree murder conviction and to conclude that Thompson's death resulted from a sudden quarrel or heat of passion is due to the testimony of the state's witness Erika Benson. She stated that Romero was the first party present to be physically attacked. She testified that after Thompson removed his Halloween mask he struck Romero in the face, causing Romero to bleed badly. The testimony of the other state witnesses, Glenda Essick, Scott Elliot, and Michelle Walter, supports Benson's testimony. Further, according to emergency room hospital records, Romero's left eye was still swollen shut eleven hours after the fight.

verdict on the lesser included offense of voluntary manslaughter.

Romero was summoned for sentencing only one business day after the trial. Prior to *any* argument by Romero's defense counsel, or the prosecutor for that matter, the trial judge, exhibiting an already made-up mind, announced that a fixed sentence would be imposed. Furthermore, notwithstanding a defense request for a presentence investigation report, and a defense objection to the lack thereof at sentencing, the trial court refused to order a presentence investigation report (PSR). Subsequently, Romero was sentenced to a fixed fifteen year term, the maximum term of confinement authorized by I.C. § 18–4007(1).

The dispositive issue on this appeal, wholly unaddressed by the Court of Appeals, but nevertheless raised by Romero,[2] is the trial court's failure to utilize a PSR. That failure requires that the sentence be vacated and the cause remanded for resentencing after the Court has required and obtained a presentence investigation and report.

■■■ After a jury's determination of guilt, it is *essential* that the court receive all available adequate information about the defendant, before imposing a sentence which hopefully will be commensurate with the crime for which the defendant has been convicted. *Idaho Judge's Sentencing Manual,* § 5.1–1.[3] Nevertheless, the trial court flatly refused to order and use a PSR, notwithstanding a timely objection made by Romero's counsel. Fundamentally, the PSR is used to assist the "court in

---

The testimony of the witnesses makes it clear that Romero went to the side of the small Griffith when it appeared that the larger Thompson and Griffith might engage in a fight. The Court of Appeals apparently did not see it important to ascertain who struck the first blow. That was also the *start* of the fight, which the Court of Appeals account did not establish. The shoes mentioned in its opinion were tennis shoes worn by Romero; the boots were those of Griffith.

2. Defendant's opening brief filed with the Court of Appeals states:

Judge Hargraves uncharacteristically announced his intention to fix the defendant's sentence at the very outset of the hearing, before even hearing the pleas of defendant's counsel for a less harsh result. (Tr., p. 371, 1. 15–16) *The sentencing was conducted without the benefit of a presentence investigation over the objection of Mr. Romero's attorney.*

App. Brief at 2. Three of the nine points and authorities cited in the brief concern the lack of the PSR:

VI.

After the determination of guilt it is essential that the court receive adequate information about the defendant before handing down the sentence. *Idaho Judge's Sentencing Manual,* § 5.1–1.

VII.

Although the trial judge need not order a presentence investigation report in every criminal case, if the trial court does not require presentence investigation, the record must show affirmatively why such an investigation was not ordered. Rule 32, Idaho Criminal Rules.

IX.

A presentence investigation and report should be made in every case where incarceration for one year or more is a possible disposition, *where the defendant is less than 21 years old, or where the defendant is a first offender.* ABA Standards Relating to Probation, § 2.1(b); *Idaho Judge's Sentencing Manual,* § 5.2–1.

*Id.* at 9–10.

The same brief also states:

Again Judge Hargraves declined to order a presentence report over the objection of defendant's counsel and in the face of the following guidance from the *Idaho Judge's Sentencing Manual* at § 5.2–12:

The primary purpose of the presentence report is to assist the court in individualizing a rational sentence for the defendant. As one authority has stated:

'No single instrument in our hands so neatly typifies the modern correctional philosophy as does the presentence report. Its only reason for being is to depict the intimate dynamics of one particular individual offender and to enable the court to dispose of his case with a tailor-made plan that is corrective in intent, whereas without such knowledge the disposition can only be *punitive*.' KEVE, *The Professional Character of the Presentence Report, Probation and Parole,* 81 (R. Carter & L. Wilkins eds., 1970) (emphasis added).

*Id.* at 16.

3. The *Idaho Judge's Sentencing Manual,* § 5.1, provides: "After the determination of guilt it is essential that the court receive adequate information about the defendant before handing down the sentence. Individualizing sentences is impossible without such information."

individualizing a *rational* sentence for the defendant." *Id.* at 5.52 (emphasis added). Simply put, the compelling need for information about the defendant at sentencing cannot be arbitrarily disregarded. Moreover, a PSR should be made in every case where incarceration for one year or more is a possible disposition, where the defendant is less than 21 years old, or where the defendant is a first offender. *Id.* at 5.2–A. Romero, a 20 year old first offender, was sentenced to a fixed 15 year term. Under all three considerations, a PSR should have been ordered.

The trial court's failure to order a presentence investigation and presentence report contravenes the *Idaho Judge's Sentencing Manual* and ABA standards. More fundamentally, the court's failure clearly violates mandatory Idaho Criminal Rules and case precedent. Idaho Criminal Rule 32 provides:

> **Standards and procedures governing presentence investigations and reports.**— The following standards and procedures shall govern presentence investigations and reports in the Idaho courts:
>
> (a) When presentence investigations are to be ordered. The trial judge need not require a presentence investigation report in every criminal case. The ordering of such a report is within the discretion of the court. With respect to felony convictions, *if the trial court does not require a presentence investigation and report, the record must show affirmatively why such an investigation was not ordered.*

(Emphasis added). This rule has been interpreted to mean that where a PSR is not ordered, the record must alternatively establish a *valid* reason why. *State v. Goldman,* 107 Idaho 209, 211, 687 P.2d 599, 661 (Ct.App.1984). Thus, it is very much in order that the record be examined to ascertain by what reasoning the trial court refused to order a PSR.

 The trial court stated only this: "since probation is not a viable alternative in this case, it is deemed unnecessary to require a presentence investigation and report thereof." This reasoning is wholly insufficient. Only *after* the sentencing court has considered a PSR is the court positioned to make an informed decision regarding the viability of probation. By way of comparison, if a defendant is convicted of first degree murder—and subject to the death penalty—probation in all probability is likewise not a "viable alternative." However, the failure to consider a PSR in such a circumstance would without question constitute reversible error. *See* I.C.R. 33.1. Thus, we conclude that the trial court's refusal to order a PSR on the basis that probation is not a viable alternative is not a valid reason under the I.C.R. 32.[4]

---

**4.** The court's dispensing with a presentence report is explained by the prosecutor's contemporaneous statement:

> For the record, Your Honor, I would point the Court to State versus Whitman at 96 Idaho 489 and State versus Gowin at 97 Idaho 146 in support of the Court's decision not to order a pre-sentence investigation in this case when the Court does not consider probation an option.

Tr., at 373. The prosecutor, through no fault of his own, inadvertently was misleading the court as to the state of the law. Subsequent to the *Whitman* and *Gowin* decisions cited by the prosecutor, effective as of January 1, 1976, Idaho Rules of Criminal Procedure provide that if a PSR is not ordered, the record must establish why it was not. The Rules clearly superseded the case law rule of *Whitman* and *Gowin.*

In *State v. Gowin,* 97 Idaho 146, 147, 540 P.2d 808, 809 (1975), the Court's opinion stated:

> We recognize that a presentence report is only mandatory in the event that a trial court is considering a defendant for probation (I.C. § 20–220, *State v. Rolfe,* 92 Idaho 467, 444 P.2d 428 (1968); *State v. McCallum,* 77 Idaho 489, 295 P.2d 259 (1959)). We have held that a presentence report is not necessarily a requirement for the sentencing of a convicted felon. *State v. Whitman,* 96 Idaho 489, 531 P.2d 579 (1975).

This language, however, must be read in context. Indeed, the failure to order a PSR when the defendant is being considered for probation is *per se* error. I.C. § 20–220. The converse is not true. Simply because probation is not an option in a particular case does not mean a sentencing judge may dispense with the PSR. As discussed more fully *infra,* a trial court may forego a PSR only where (a) the record affirmatively establishes a valid reason therefor, and (b) there is sufficient information from independent sources to enable the sentencing court to

Furthermore, Idaho precedent mandates that the trial judge order a presentence investigation prior to sentencing. In *State v. Goldman,* 107 Idaho 209, 687 P.2d 599 (Ct.App.1984), the trial court refused to order a PSR or update a PSR prepared several months earlier. The Court of Appeals vacated Goldman's sentence, holding that even though Goldman had not objected to the lack of a PSR, *the absence of an objection did not excuse noncompliance with Rule 32: "The rule is there to be followed."* 107 Idaho at 211, 687 P.2d at 602, quoting *State v. Toohill,* 103 Idaho 565, 566, 650 P.2d 707, 708 (Ct.App.1982) (emphasis added). Romero, conversely, *did* raise that issue. This case, then, is even more compelling than *Goldman.* Strangely, the Court of Appeals did not apply nor cite its *Goldman* decision of which we specifically note our approval.[5]

Our decision today does not unsettle prior case law which provides that a PSR need not be ordered in every case. On rare occasions the sentencing court may have sufficient information before it to properly come to a decision as to an appropriate sentence. For example, in *State v. Powers,* 100 Idaho 614, 603 P.2d 569 (1969), where the district court at sentencing utilized the information contained in the defendant's PSR used only nine days earlier at sentencing for an another unrelated drug offense, we concluded: "Absent a showing of some material change in defendant's circumstances in the nine day interim it was not error to reuse the same report." 100 Idaho at 616, 603 P.2d at 571.[6] In the case at bar, by contrast, the record shows that the sentencing court had no independent information to vitiate the need for a PSR.[7]

fashion an appropriate sentence. In *State v. Roderick,* 97 Idaho 82, 540 P.2d 267 (1975), for example, the lack of a PSR was not grounds for reversal because the sentencing judge had adequate information before him to fashion an appropriate sentence, namely, a psychiatric evaluation and reports.

5. Justice Bakes in dissent makes the bold—and unsupported—statement that "the Court of Appeals in this case *acknowledged* that the trial judge dispensed with the PSR in the exercise of sound judicial discretion." *Post* at 397, 775 P.2d at 1239. The Court of Appeals decision begins on page 92 of volume 114 of the Idaho Reports (and page 828 of volume 753 of the Pacific Reporter (2d)). The interested reader will readily perceive that the Court of Appeals opinion makes no mention of a PSR and did not enter into any discussion pertaining to the trial court's discretion in dispensing with the requirement of a PSR.

6. Both of Power's offenses were committed in the Second Judicial District, the first in Clearwater County on June 24, 1976, and the second in Nez Perce County on December 17, 1976. The sentences were imposed by the same judge.

7. Justice Bakes in dissent makes the statement that "[a]t the sentencing hearing Judge Hargraves *knew,* pursuant to his *in camera* discussions with counsel, that he was already in possession of all pertinent information and that a presentence report would not shed any additional light or expose any new evidence." *Post* at 398, 775 P.2d at 1240 (emphasis added). The record does not contain any such discussion. Furthermore, even were Justice Bakes correct, it would have been impossible for Judge

Hargraves to "know" that "he was already in possession of all pertinent information" without the benefit of a presentence investigation and report.

By contrast, Judge Transtrum in the companion case, *State v. Griffith,* 114 Idaho 95, 753 P.2d 831 (1988), did require a presentence report, and obtained from it much of the information which guided his sentencing decision. The report showed that Griffith "had a long history of incorrigible antisocial behavior; Griffith had previously been committed to a youth correction facility and had refused to cooperate in a rehabilitation counseling program; he has a bad temper and is unable to deal with authority; he was a drug user; he has no home and primarily lived in the streets. While incarcerated awaiting his trial in the instant matter, Griffith exhibited antisocial behavior and was involved in fights at the jail." 114 Idaho at 96, 753 P.2d at 832.

Moreover, we cannot in good conscience overlook the additional insight which we gain in this tragic affair by considering the remarks of the prosecuting attorney at Griffith's sentencing hearing. In addressing Judge Transtrum concerning *Griffith's complicity, the prosecutor* stated that one of the witnesses attributed to Jerry Griffith the threat to Robert Thompson, "I'm going to kill you for messing with my friend." Tr. of Griffith Sentencing, p. 34. Speaking of Romero's complicity, the prosecutor stated, "The one thing that you can say about Miguel Romero and it was forcibly argued to the jury, was that he had some element of provocation in the initial part of this incident, Miguel Romero was struck by Bob Thompson as Bob Thompson defended himself. He had a swollen eye and was bleeding."

Trial judges are vested with the weighty responsibility of sentencing those individuals unable to conduct themselves within the bounds of our criminal laws. In Idaho there are four goals of criminal punishment:

(1) protection of society,

(2) deterrence of the individual and the public generally,

(3) possibility of rehabilitation, and

(4) punishment or retribution for wrongdoing.

*State v. Toohill,* 103 Idaho 565, 569, 650 P.2d 707, 711 (Ct.App.1982); *State v. Wolfe,* 99 Idaho 382, 384, 582 P.2d 728, 730 (1978); *State v. Moore,* 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956). Without the crucial information provided in such sources as a PSR, it is impossible for a sentencing court to make an informed decision necessary to promote these four goals.

This Court over 30 years ago stated that "the law recognizes that the previous character, good or bad, of one convicted should be considered in fixing the punishment." *State v. Weise,* 75 Idaho 404, 411, 273 P.2d 97, 101 (1954). Here, Romero was sentenced by a judge who did not follow the

Whereas Romero had no previous criminal record, the prosecuting attorney advised Judge Transtrum as to even more in Griffith's presentence report than the Court of Appeals set out in its opinion, "He's got a long criminal record, going down and counting the various citations or charges that are identified just in the presentence investigation there are nearly twenty of those. Many of which are felony type offenses. According to the pre-sentence investigation he admits to others. The institutions that have dealt with him used terms such as explosive, impulsive, resistive, hostile, disruptive, argumentive and defiant to describe him. We can add one more, deadly.... When you look at the pre-sentence investigation it calls for his version of what occurred, what does he do. He essentially dissolves himself of responsibility and says it was Jose that was really out there, Jose and Miguel were the ones that were involved in the beating death of Robert Thompson. He didn't make that statement previously. Police records indicated he never asserted that as a defense. In the waning moments before his sentencing then he tries to relieve himself of responsibility. Your Honor, he is a threat to society. As a younger person living in his home the investigative report indicates that he fought with his brothers. When he went to school he fought with his classmates. The report even tells about one incident where he was involved in some stealing or at least accused of stealing something. And, he chased after those that accused him and when he caught them he knocked them down and kicked them in the face."

We also note that the district judge, in addition to not obtaining the information as to Romero's previous history, did not take into account to at least some extent the fact that Mr. Thompson had been drinking, as also had Miguel Romero. To be certain, that is not an excuse for the homicide, but it is a factor. It is also a factor not given any mention in the opinion of the Court of Appeal. Yet Romero's counsel in his brief, at page 4, pointed out that Mr. Thompson "had a blood alcohol concentration of .10, an alcohol level at which driving a motor vehicle under Idaho law is prohibited."

The Court of Appeals did, however, correctly note that, although Romero "had been drinking for a prolonged period of time prior to the homicide, Romero had been talking with a girl when the confrontation began between Griffith and Thompson. Romero then chose to become involved in the fight and the brutal result." 114 Idaho at 94, 753 P.2d at 830. This, of course, dovetails with the prosecuting attorney's statements at the sentencing of Griffith, which were to the effect that Thompson's initial blow dealt to Romero caused Romero's involvement in a fight where he, Romero, was not the aggressor, but more apparently stepped forward to defend his companion, Griffith, and perhaps bring about an avoidance of any fight. The record is silent as to any propensity for previous fighting on the part of Romero, which is all the more reason for not excusing noncompliance with the rule requiring presentence reports. As appellant's brief at page 4, citing to the transcript at pages 10, 230, and 334, asserts "only after a period of time did Miguel Romero exit the vehicle he was entering and walk over to Mr. Griffith and Mr. Thompson in an effort to stop the trouble that was brewing. (Tr., p. 10, LL. 15–17, Tr., p. 334, LL. 17–18, Tr., p. 230, LL. 13–15)." Appellant's brief, at page 15, also adds that Judge Hargraves gave no consideration to five recommendations set forth in the *Idaho Judge's Sentencing Manual:*

A. Previous good character should be considered in fixing punishment. (Section 2.2–1 of the Manual.)

B. Defendant should not be penalized for obtaining an acquittal on the charge of murder at jury trial. (Section 4.2–1).

C. The court should have adequate information about the defendant before sentencing. (Section 5.1–1 of the Manual.)

D. Presentence report should be ordered on every case where the defendant is a first offender OR under the age of 21. (Section 5.2–1 of the Manual.)

E. A sentence, only punitive in nature, is generally not advised. (Section 5.1–12 of the Manual).

mandates of court rules or case precedent, thereby depriving himself of the information which should be at hand in fashioning an appropriate sentence. Accordingly, the judgment of the district court insofar as it imposes sentence is vacated, and the cause remanded for resentencing. The opinion of the Court of Appeals is vacated.

HUNTLEY and JOHNSON, JJ. concur.

BAKES, Chief Justice, dissenting:

Although the majority correctly acknowledges that "prior case law ... provides that a PSR need not be ordered in every case," and that "the sentencing court may have sufficient information before it to properly come to a decision as to an appropriate sentence," *ante* at 395, 775 P.2d 1237, it then errs when it concludes that "[i]n the case at bar, by contrast, the record shows that the sentencing court had no independent information to vitiate the need for a PSR." *Ante* at 395, 775 P.2d at 1237. Assuming, arguendo, that Romero has raised the PSR issue,[8] I would hold that it was not error for the sentencing judge to not order a PSR under the particular facts of this case.

Idaho Criminal Rule 32, in pertinent part, reads as follows:

**Rule 32. Standards and procedures governing presentence investigations and reports.**—The following standards and procedures shall govern presentence investigations and reports in the Idaho courts:

(a) When presentence investigations are to be ordered. *The trial judge need not require a presentence investigation report in every criminal case. The ordering of such a report is within the dis-*

cretion *of the court.* With respect to felony convictions, if the trial court does not require a presentence investigation and report, the record must show affirmatively why such an investigation was not ordered. (Emphasis added.)

Thus, the ordering of a presentence investigation is not mandatory in every case, as the Court's opinion infers, but is within the discretion of the trial court. If the court does not require a presentence report in a felony case, the record need only show affirmatively why such was not ordered.[9] I.C.R. 32 was further explained and applied in *State v. Goldman,* 107 Idaho 209, 687 P.2d 599 (Ct.App.1984). In *Goldman,* the Court of Appeals remanded the case to the trial court, holding that the trial court should not have dispensed with the PSR without making an affirmative showing on the record of a valid reason for doing so. In that case, the trial judge made no affirmative showing on the record of his reasons for dispensing with the PSR. Had he done so, however, the Court of Appeals recognized that it could not later set the sentence aside. As the Court of Appeals stated:

We turn first to Rule 32. As noted above, this rule would afford us no basis to set aside a sentence if the trial judge had dispensed with the report in the sound exercise of judicial discretion and the record affirmatively showed why he did so.

107 Idaho at 210, 687 P.2d at 600.

By way of contrast, the Court of Appeals in this case acknowledged that the trial judge dispensed with the PSR in the exercise of sound judicial discretion, and the record before this Court affirmatively shows that he did so because the PSR would have shed no additional light favor-

---

8. Although not denominated by appellant as a formal issue on appeal, the absence of a presentence report (PSR) was discussed in appellant's brief.

9. The Idaho Judge's Sentencing Manual § 5.2 (1986) seems to be in conflict and reads, in part, as follows:

It is suggested by the ABA Standards Relating to Probation, Section 2.1(b), that a presentence investigation and report should be made

in every case where incarceration for one year or more is a possible disposition, where the defendant is less than 21 years old, or where the defendant is a first offender.

The suggested ABA probation standards are not binding on this Court and the inclusion of the ABA suggestion in the Idaho Judge's Sentencing Manual does not override the superior authority of the Idaho Criminal Rules, here specifically I.C.R. 32.

ing Romero. In fact, rather than bolstering Romero's status, a PSR would probably have diminished it. At the sentencing hearing the very first thing Judge Hargraves did was go on the record as follows:

> Before we proceed with the actual sentencing, I'm going to make a couple of observations. A pre-sentence investigation was not ordered in this case, and that has been discussed with counsel. But I want it to appear on the record that the Court heard all of the testimony;....

The primary purpose of a PSR is to give the sentencing judge adequate information about the defendant before handing down the sentence. Idaho Judge's Sentencing Manual § 5.1 (1986). Although the in camera discussions between Judge Hargraves and counsel were not recorded, at the hearing before this Court defense counsel explained why Judge Hargraves stated that he had heard all of the testimony and that the lack of a presentence report had been discussed with counsel prior to sentencing. At oral argument before this Court, when asked if he really wanted a presentence report, defense counsel answered, "Frankly, the best mitigation evidence that I am going to be able to put on I did with my client when he took the stand.... I would urge that ... really not much more can be fleshed out in the record...." At the sentencing hearing Judge Hargraves knew, pursuant to his in camera discussions with counsel, that he was already in possession of all pertinent information and that a presentence report would not shed any additional light or expose any new mitigating evidence. This fact was echoed by defense counsel himself at the sentencing hearing when he said, "I recognize that a pre-sentence really wouldn't enlighten the Court much more about certainly what happened in this incident." Accordingly, in compliance with I.C.R. 32 and State v. Goldman, 107 Idaho 209, 687 P.2d 599 (Ct.App.1984), at the sentencing hearing Judge Hargraves immediately went on the record and affirmatively explained why, in his discretion, the PSR was not ordered in this case.

On this record the trial judge did not abuse his discretion.

When an exercise of discretion is reviewed on appeal, the appellate court conducts a multi-tiered inquiry. The sequence of the inquiry is (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason.

*Associates Northwest, Inc., v. Beets*, 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct.App. 1987). All three tiers are met in the instant case. First, the trial judge rightly perceived that the ordering of a PSR was within his discretion and, in choosing not to order one, he acted within the bounds of his discretion. Second, the trial judge acted consistently with the legal standards set out in I.C.R. 32 by showing affirmatively on the record that the PSR was not ordered because he already possessed all the pertinent information regarding Romero. And third, the trial judge reached his decision by an exercise of reason, his reasoning being that he was already in possession of all pertinent information necessary to sentence Romero and that a presentence report would not shed any additional light or expose any new mitigating evidence. Where the trial judge properly identifies the law and applies the law to the facts, then the trial judge's discretion has not been abused. Both prongs of the I.C.R. 32 analysis have been met—the trial judge did not abuse his discretion and the trial judge went on the record showing affirmatively why a PSR was not ordered. Accordingly, the Court of Appeals was correct in affirming the trial judge's decision not to order a PSR in this case. As stated in *Goldman*, "[T]his rule [I.C.R. 32] afford[s] us no basis to set aside a sentence [where] the trial judge ... dispensed with the report in the sound exercise of judicial discretion and the record affirmatively show[s] why he did so." 107 Idaho at 210, 687 P.2d at 600.

Even if it was error for the trial judge not to order a PSR in this case (which it was not, as has been established above), it was harmless error because defense coun-

sel admitted, at the hearing before this Court, that he was able to get all of his available mitigating evidence in during the trial. As noted above, defense counsel told this Court, "Frankly, the best mitigating evidence that I am going to be able to put on I did with my client when he took the stand.... I would urge that ... really not much more can be fleshed out in the record...." Further, earlier in the hearing defense counsel stated, "A remand would not shed ... as I suggested to the Court of Appeals, I believe it would bring a lot more heat and little additional light." In short, defense counsel was able to get all the mitigating evidence in during the trial and sentencing hearing, and, in fact, he was concerned that a PSR or a remand for resentencing would hurt, rather than help, defendant Romero. Again at the hearing before this Court, defense counsel stated, "I am concerned that on remand, in what would likely be an aggravation/mitigation hearing, that the incredible popularity of the victim would override any scrutiny of Mr. Romero's circumstance.... I am concerned ... that [a remand] could set him back...." Thus, even if the lack of a PSR was error, it was harmless error under the facts of this case.

The trial court did not err in not ordering a presentence report. Neither did the Court of Appeals err in its review of the other issues raised by Romero in his appeal before that tribunal. *State v. Romero*, 114 Idaho 92, 753 P.2d 828 (Ct.App.1988). Accordingly, I would affirm the judgment of the district court in its entirety.

SHEPARD, J.,* concurs.