**Maxwell HOFFMAN, Petitioner–
Appellant,**

v.

**A.J. ARAVE, Warden, Respondent–
Appellee.**

No. 99–99002.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 2000

Filed Jan. 3, 2001

Joan M. Fisher, Federal Defenders of Eastern Washington and Idaho, Moscow, Idaho and Ellison Matthews, Boise, Idaho, for the petitioner-appellant.

L. LaMont Anderson, Deputy Attorney General, Boise, Idaho, for the respondent-appellee.

Before: PREGERSON, W. FLETCHER and GOULD, Circuit Judges.

PREGERSON, Circuit Judge:

Maxwell Hoffman ("Hoffman") appeals the district court's dismissal of his petition for a writ of habeas corpus, in which he claims, inter alia, that the district court erred in finding that: (1) Idaho Code § 19–2719 was an adequate and independent state law ground to support the state court's judgment that petitioner had defaulted his ineffective assistance of counsel claims; (2) petitioner's due process rights were not violated by the state trial court's refusal to allow petitioner's attorney to be present at the presentence interview conducted by the state probation officer; (3) the "heinous, atrocious and cruel" aggravating factor in Idaho's capital sentencing law, Idaho Code § 19–2515(h)(5), was not unconstitutionally vague; and (4) the application of Idaho's capital sentencing scheme did not unconstitutionally deprive petition-

er of the right to have a jury determine the presence of an aggravating circumstance in light of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

This court has jurisdiction to review petitioner's claims under 28 U.S.C. §§ 1291 and 2254. We affirm the district court's ruling that Hoffman's ineffective assistance of counsel claims were procedurally defaulted under Idaho Code § 19–2719, but reverse on the question whether the Idaho statute is "adequate" to preclude federal review of the underlying constitutional claim. *Hoffman v. Arave,* 973 F.Supp. 1152, 1166–68 (D.Idaho 1997). We also reverse the district court's finding that Hoffman's Sixth Amendment right to counsel was not violated by the Idaho trial court's refusal to allow petitioner's attorney to be present at the presentence interview conducted by a state probation official. *Hoffman v. Arave,* 73 F.Supp.2d 1192, 1203–07 (D.Idaho 1998).[1] With respect to petitioner's remaining claims, we uphold the findings of the district court.[2] Accordingly, we affirm in part, reverse in part, and remand for an evidentiary hearing on petitioner's ineffective assistance of counsel claims.

## I.

### Facts and Procedural History

On March 16, 1989, an Idaho jury found Hoffman guilty of first degree murder for killing Denise Williams, a police informant. At trial, Hoffman, who is indigent, was represented by county public defenders William Wellman ("Wellman") and Charles Coulter ("Coulter"). Following Hoffman's conviction, the state sought the death penalty. Pursuant to Idaho law, the state trial court conducted a separate sentencing proceeding, which included a presentence interview of the defendant by a probation officer, the submission of a presentence report written by the probation officer, and a sentencing hearing held by the court in which aggravating and mitigating evidence was presented by the state and defense counsel. After considering the testimony at trial and sentencing, and the presentence report submitted by the probation officer, the trial court imposed the death penalty.

Before sentencing proceedings began, Hoffman's trial counsel filed a motion requesting the right to have counsel present at the presentence interview with the probation officer, which the court denied. Trial counsel also filed a motion pursuant to Idaho Code §§ 19–2522(3)(a–f) and (5) requesting that the court order a psychiatrist or psychologist to examine "the mental condition of the defendant" and submit a written report to defense counsel. The court granted the motion and appointed psychologist David Sanford, Ph.D., to prepare a written evaluation of Hoffman and submit it to defense counsel.[3] Dr. Sanford prepared a report, in which he concluded that Hoffman was "illiterate," and "shows a rather consistent picture of brain damage to the left hemisphere" that created

---

**1.** The district court issued two separate opinions with respect to Hoffman's federal habeas petition. In the first opinion, the court addressed the claims which had been dismissed by the Idaho Supreme Court as procedurally defaulted. In the second opinion, the court addressed Hoffman's remaining claims, which the Idaho Supreme Court had rejected on the merits.

**2.** In Part V, a majority of the panel, Judges W. FLETCHER and GOULD, conclude that Hoffman's *Apprendi* claim is foreclosed by *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). Judge PREGERSON does not believe that *Walton* pre-

cludes the application of *Apprendi* to Hoffman's case. Judge PREGERSON concludes, however, that the *Apprendi* error was harmless and thus concurs separately in Part V.

**3.** The court ordered that Dr. Sanford's report include: an account of the procedures used in the examination; a diagnosis of the defendant's mental state; an analysis of whether the defendant was functionally impaired; and an analysis of whether treatment was available for the defendant's mental condition, the risks of such treatment, and the risk posed by the defendant to society.

"significant articulation problems" and an "overall borderline intellectual capability." Hoffman's attorneys elected not to present Sanford's report at sentencing or "make any use of the psychological findings."[4] *State v. Hoffman*, 123 Idaho 638, 851 P.2d 934, 937 (1993), *cert. denied, Hoffman v. Idaho*, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994).

On June 9, 1989, the court held a sentencing hearing to determine whether Hoffman would receive life in prison or the death penalty. Hoffman testified that he had spent most of his childhood as a ward of the state and some of his adult life in state penal institutions where he was incarcerated for burglary and robbery. He testified that his schooling had been sporadic, that he had never learned to read, and that he had chronic problems with alcohol and drugs.

On June 13, 1989, the trial court, after finding that the aggravating factors outweighed the mitigating evidence, sentenced Hoffman to death. In a written decision, the court found that two statutory aggravating factors, the killing of a government witness and the particularly "heinous, atrocious and cruel" nature of the murder, outweighed the mitigating factors, which included Hoffman's drug addiction, educational deficiencies, and disadvantaged social background.

Hoffman's petition for state post-conviction relief was timely filed on July 25, 1989, by trial counsel Wellman and Coulter, who continued to provide legal representation. Counsel requested an additional psychological evaluation, which was denied. The state court held an evidentiary hearing on the petition, which alleged multiple claims of error at trial and sentencing, and denied relief on December 13, 1989.

Wellman and Coulter appealed to the Idaho Supreme Court. The appeal consolidated the direct appeal and post-conviction claims of error as required by Idaho Code § 19–2719. No issues regarding ineffective assistance of counsel were raised in the appeal. On January 29, 1993, the Idaho Supreme Court affirmed Hoffman's death sentence and the state trial court's denial of his post-conviction petition. *See Hoffman*, 851 P.2d at 944, *cert. denied, Hoffman v. Idaho*, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994).

Hoffman, represented by newly appointed counsel, Charles Peterson ("Peterson") and Ellison Matthews ("Matthews"), filed a second petition for post-conviction relief in the state district court on July 7, 1995. The petition alleged fourteen grounds for relief, including three claims asserting that petitioner had been denied the effective assistance of counsel at trial, sentencing, and on direct appeal. The state moved to dismiss the petition, asserting that the fourteen claims were procedurally defaulted because Idaho Code § 19–2719 mandates the filing of all post-conviction claims within forty-two days of the entry of judgment. The state district court denied relief on May 20, 1996.

Hoffman's attorneys appealed the dismissal of the second petition to the Idaho Supreme Court. The state filed a motion to dismiss, in which it renewed its argument that the claims were procedurally defaulted. On December 6, 1996, the Idaho Supreme Court issued a brief, unexplained ruling granting the state's motion. *See Hoffman*, 973 F.Supp. at 1164.

On April 2, 1996, Hoffman's counsel filed a federal habeas petition in the United States District Court for the District of Idaho asserting, inter alia, that: Idaho Code § 19–2719 deprived petitioner of his

---

4. The court order states, in relevant part: "The Court advised the parties that defendant will have to decide whether he wants to use the psychologist as a witness so that the State can have an opportunity to review the report." The court went on to say that if defense counsel did intend to "use any part of [Sanford's] report at the time of sentencing, he will need to furnish a copy" to the prosecution several weeks before the sentencing hearing.

constitutional right to due process and equal protection; counsel's performance at trial, sentencing, and on appeal was deficient and prejudicial in violation of petitioner's Sixth Amendments rights; petitioner's ineffective assistance of counsel claims were not procedurally barred; the trial court's refusal to allow petitioner to have counsel present for the presentence interview conducted by the probation officer violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights; and the "heinous, atrocious and cruel" aggravating factor listed under Idaho Code § 19–2515(h)(5) was unconstitutionally vague. *See Hoffman,* 973 F.Supp. at 1152.

The District Court of Idaho issued two opinions concerning Hoffman's habeas petition. In the first opinion, issued on June 13, 1997, the court dismissed with prejudice some of Hoffman's claims for relief, including his ineffective assistance of counsel claims, based upon a finding of procedural default.[5]

On December 28, 1998, the district court issued its second opinion concerning Hoffman's habeas petition, which addressed the merits of the remaining claims.[6] *See id.* The court rejected all of the surviving claims in the petition. *See id.* On January 20, 1999, Hoffman's counsel filed a

notice of appeal of the district court's denial of the petition.

■■■ The district court's decision to grant or deny a § 2254 habeas petition is reviewed de novo. *Bribiesca v. Galaza,* 215 F.3d 1015, 1018 (9th Cir.2000). Dismissal based on state procedural default presents issues of law reviewed de novo. *Fields v. Calderon,* 125 F.3d 757, 759–60 (9th Cir.1997).

## II.

### Ineffective Assistance of Counsel Claims

■■■ The right to the effective assistance of counsel is "fundamental and essential to fair trials." *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *see also Evitts v. Lucey,* 469 U.S. 387, 394–96, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Because this right "lies at the very foundation of the adversary system of criminal justice," habeas courts must be "particularly vigilant in scrutinizing the adequacy of state rules of procedural default which have the effect of barring federal habeas review of claims of ineffective

---

**5.** The district court also found that petitioner had procedurally defaulted his claims that: (1) the denial of funds for a psychiatrist to assist petitioner's counsel at the state post-conviction proceedings violated his Fifth, Sixth, and Eighth Amendment rights; (2) the imposition of the death penalty was disproportionate to the nature of the crime and to the crimes for which other defendants had been sentenced to death in violation of his Sixth, Eighth, and Fourteenth Amendment rights; (3) Idaho Code § 19–2827 failed to channel meaningfully the state supreme court's proportionality review; and (4) the Idaho statute authorizing the imposition of the death sentence without jury involvement violated his Sixth, Eighth, and Fourteenth Amendment rights. The district court's findings of procedural default with respect to these claims were correct and this court has no jurisdiction to review them.

**6.** On February 27, 1998, in between the first and second district court opinions, Hoffman

filed a pro se motion to dismiss his habeas counsel, drop all further appeals, and vacate the stay of execution. On March 18, the district court ordered a psychological evaluation of Hoffman. A competency hearing was held on May 6, and on May 8, Hoffman was found competent to dismiss his appeals. On May 15, the court received documents signed by petitioner that included a motion to reappoint counsel to represent him and a statement authorizing appointed counsel to file a petition for rehearing. The court reappointed Peterson and Ellison to represent petitioner. On May 22, counsel filed a motion to reinstate Hoffman's habeas petition. At the evidentiary hearing on the motion to reconsider, Dr. Craig W. Beaver, the court-appointed psychiatrist, testified that petitioner suffered from a mental defect because of his low IQ and had "a mental disease or disorder" because of significant depression. On June 1, the court granted petitioner's motion to reinstate the habeas petition.

assistance of counsel." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir.1998).[7]

In this petition, Hoffman renews claims that he was deprived of his constitutional right to the effective assistance of counsel at trial, sentencing, and on appeal. The district court held that Idaho Code § 19–2719 constituted a procedural bar that precluded federal habeas review of Hoffman's ineffective assistance of counsel claims. While we agree with the district court that Hoffman's ineffective assistance of counsel claims are procedurally defaulted under Idaho Code § 19–2719, we find that the statute is an unreasonable restriction on the exercise of the federally protected constitutional right to counsel and therefore is inadequate to bar federal review. *Michel v. Louisiana*, 350 U.S. 91, 93–94, 76 S.Ct. 158, 100 L.Ed. 83 (1955); *English*, 146 F.3d at 1260–64.

### A. Procedural Default

■ Idaho Code § 19–2719 requires capital defendants to "file any legal or factual challenge to the sentence or conviction that is known or reasonably should be known"[8] within forty-two days of the entry of judgment.[9] The judgment against Hoffman was entered on June 13, 1989. Hoffman's ineffective assistance of counsel claims were raised for the first time in a second petition for post-conviction relief, which was filed on July 7, 1995. The state responded with a motion to dismiss, arguing that the claims in Hoffman's post-conviction petition were procedurally defaulted because they were not timely filed within the forty-two day period required by the statute. In a two-sentence order,

the Idaho Supreme Court granted the state's motion and dismissed the petition. *See Hoffman*, 973 F.Supp. at 1164. The federal district court concluded that Hoffman's ineffective assistance of counsel claims, raised for the first time after the expiration of the statute's forty-two day deadline, were procedurally defaulted. *Id.* at 1165–66; *see also Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Coleman v. Thompson*, 501 U.S. 722, 735–36, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). We agree with the district court that Hoffman's ineffective assistance of counsel claims are procedurally defaulted under Idaho Code § 19–2719, but now address the question whether this procedural default is adequate to preclude federal review.

### B. The Adequate and Independent State Law Grounds Doctrine

■ In the usual case, state procedural rules dictate the time and manner in which federal constitutional rights are adjudicated in state court. Comity and federalism require federal courts to defer to the states' "dignitary interest in seeing that their state law decisions are not ignored by a federal habeas court." *Coleman*, 501 U.S. at 738, 111 S.Ct. 2546. When a state court litigant raises a federal claim in a manner that does not comply with a state procedural rule, the state court may dismiss that claim as defaulted. So long as the dismissal relies on a state law ground that is independent of the federal question and adequate to support the judgment, it will be insulated from federal review. *See,*

7. The Supreme Court has recognized that ineffective assistance of counsel claims, unlike most claims alleging error at trial and sentencing, are best presented for the first time in collateral proceedings when the defendant is represented by new counsel, rather than on direct appeal, when the defendant is often represented by trial counsel. *See Kimmelman v. Morrison*, 477 U.S. 365, 378, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) ("Indeed, an accused will often not realize that he has a meritorious ineffectiveness claim until he be-

gins collateral proceedings, particularly if he retained trial counsel on direct appeal.").

8. Idaho Code § 19–2719(3) (West 2000).

9. The Idaho Supreme Court has upheld the constitutionality of the statute's 42 day filing requirement. *See State v. Rhoades*, 120 Idaho 795, 820 P.2d 665, 676 (1991), *cert. denied*, 504 U.S. 987, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992).

*e.g., Wainwright v. Sykes,* 433 U.S. 72, 81, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ The Supreme Court has held, however, that if a state procedural rule frustrates the exercise of a federal right, that rule is "inadequate" to preclude federal courts from reviewing the merits of the federal claim. *See, e.g., Staub v. City of Baxley,* 355 U.S. 313, 325, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958) (holding that denial of petitioner's constitutional claims for failure to attack specific sections of the challenged ordinance was an inadequate state law ground).

■ The "inadequate" state grounds doctrine is rooted in a concern that a state's rigid adherence to technical requirements of dubious validity may result in fundamental unfairness where federal rights are at stake. *See Davis v. Wechsler,* 263 U.S. 22, 23, 44 S.Ct. 13, 68 L.Ed. 143 (1923) (holding that "the assertion of Federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice"). In a criminal case, the test for whether a state procedural rule constitutes an "insuperable barrier" to the assertion of a federal right is "whether the defendant has had 'a reasonable opportunity to have the issue as to the claimed right heard and determined' by the State court." *Michel,* 350 U.S. at 93, 76 S.Ct. 158 (internal citations omitted).

■ In *Reece v. Georgia,* a capital case, the Supreme Court applied the *Michel* test to a state court's dismissal of petitioner's challenge to the composition of the grand jury, filed *after* an indictment was returned. The Georgia Supreme Court refused to consider Reece's claim on the merits, holding that Reece's claim was untimely under a state procedural rule requiring defendants to raise grand jury composition challenges *before* the indictment was returned. *See Reece v. Georgia,* 350 U.S. 85, 89, 76 S.Ct. 167, 100 L.Ed. 77 (1955). The Supreme Court reversed. Noting that Reece had no access to counsel during the preindictment stage of the

proceedings and that the grand jury was convened by an order that failed to give him notice that a case was being brought against him, the Court concluded that the state court's finding of procedural default was "utterly unrealistic." *Id.* The Supreme Court's interpretation of the *Michel* test in *Reece* makes clear that where the application of a state procedural rule operates to frustrate the exercise of a federal constitutional right, federal courts may reach the merits of the underlying federal claim.

### C. Idaho Code § 19–2719 Frustrated the Exercise of Hoffman's Sixth Amendment Claims

■ The unique difficulties involved in arguing claims of ineffective assistance of counsel have led federal habeas courts to find "inadequate" a state procedural bar that denies a petitioner "any meaningful review of his ineffective assistance claim." *Brecheen v. Reynolds,* 41 F.3d 1343, 1364 (10th Cir.1994). Indeed, three federal circuit courts have held that where a criminal defendant does not comply with the procedural requirement that his ineffective assistance of counsel claims be raised on direct appeal, he has not, in most circumstances, waived his right to have a federal court review those claims on the merits.

In *English v. Cody,* the Tenth Circuit held that a criminal defendant must be able to obtain an objective assessment of trial counsel's performance and be allowed to develop adequately the factual basis of any ineffective assistance of counsel claim. Considering an Oklahoma statute requiring criminal defendants to raise all ineffective assistance of counsel claims on direct review, the court concluded that the state law would not bar federal review on the grounds of procedural default unless: (1) the defendant was appointed separate counsel on appeal; and (2) the claim could be resolved on the basis of the trial record alone. The opinion noted that, unless one of the narrow exceptions applied, there is a "constitutional imperative that this court

disregard a state procedural bar for the review of ineffective assistance [of counsel] claims." *English,* 146 F.3d at 1261. The Second and Seventh Circuits have reached the same conclusion. *See Guinan v. United States,* 6 F.3d 468, 471–73 (7th Cir.1993) (holding that ineffective assistance of counsel claims not raised on direct appeal were not waived if the defendant continued to be represented by trial counsel or if the ineffectiveness claims required investigation outside of the trial record); *Ciak v. United States,* 59 F.3d 296, 303–04 (2d Cir.1995) (same).

Because Idaho's unitary statute requires the consolidation of post-conviction and direct appeal claims in a single petition and requires such consolidated claims to be filed within forty-two days of entry of

judgment, it requires ineffective assistance of counsel claims to be raised on direct appeal. Thus, Hoffman is similarly situated to the defendants in *Cody, Guinan,* and *Ciak* with respect to the constraints imposed by state procedural rules on the timeliness of his ineffective assistance of counsel claims.

In 1984, the Idaho Legislature enacted Idaho Code § 19–2719 "to accomplish the purpose of eliminating unnecessary delay in carrying out a valid death sentence." [10] The statute requires a capital defendant, within forty-two days of the entry of the judgment imposing the death penalty, to "file any legal or factual challenge to the sentence or conviction that is known or reasonably should be known." [11] This for-

---

10. Idaho Code § 19–2719 (West 2000).

11. Idaho Code § 19–2719(3). The relevant portions of the statute are set forth below:

> 19–2719: Special appellate and post-conviction procedure for capital cases—Automatic stay.
> The following special procedures shall be interpreted to accomplish the purpose of eliminating unnecessary delay in carrying out a valid death sentence.
> (1) When the punishment of death is imposed the time for filing an appeal shall begin to run when the death warrant is filed.
> (2) The death warrant shall not be filed until forty-two (42) days after the judgment imposing the death sentence has been filed, or, in the event a post-conviction challenge to the conviction or sentence is filed, until the order deciding such post-conviction challenge is filed.
> (3) Within forty-two (42) days of the filing of the judgment imposing the punishment of death, and before the death warrant is filed, the defendant must file any legal or factual challenge to the sentence or conviction that is known or reasonably should be known.
> (4) Any remedy available by post-conviction procedure, habeas corpus or any other provision of state law must be pursued according to the procedures set forth in this section and within the time limitations of subsection (3) of this section.
> (5) If the defendant fails to apply for relief as provided in this section and within the time limits specified, he shall be deemed to

> have waived such claims for relief as were known, or reasonably should have been known. The courts of Idaho shall have no power to consider any such claims for relief as have been so waived or grant any such relief. . . .
> (6) In the event the defendant desires to appeal from any post-conviction order entered pursuant to this section, his appeal must be part of any appeal taken from the conviction or sentence. All issues relating to conviction, sentence and post-conviction challenge shall be considered in the same appellate proceeding.
> (7) If post-conviction challenge is made under this section, questions raised thereby shall be heard and decided by the district court within ninety (90) days of the filing of any motion or petition for relief timely filed as provided by this section. The court shall give first priority to capital cases. In the event the district court fails to act within the time specified, the supreme court of Idaho shall, on its own motion or the motion of any party, order the court to proceed forthwith, or if appropriate, reassign the case to another judge. When the supreme court intervenes as provided, it shall set a reasonable time limit for disposition of the issues before the district court.
> (8) The time limit provided in subsection (7) of this section for disposition of post-conviction claims may be extended only upon a showing of extraordinary circumstances which would make it impossible to fairly consider defendant's claims in the time provided. Such showing must be made under oath and the district court's finding that extraordinary circumstances

ty-two day deadline is the shortest in the nation and applies to "[a]ny remedy available by post-conviction procedure, habeas corpus or any other provision of state law."[12] Failure to file a claim for post-conviction relief within the statutory time limit is deemed a waiver, and the Idaho courts are stripped of the jurisdiction to hear "any such claims for relief."[13] In addition, § 19–2719 requires capital defendants to present simultaneously all post-conviction and direct appeal claims by combining them in a single petition for review by the Idaho Supreme Court.[14]

The Idaho Supreme Court has strictly construed the waiver provision of the statute as limiting a capital defendant to "one opportunity to raise all challenges to the conviction and sentence in a petition for post-conviction relief" except in "unusual cases." *Rhoades*, 820 P.2d at 677, *cert. denied*, 504 U.S. 987, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992). Allegations of ineffective assistance of counsel are not considered claims that fall within the "unusual cases" exception, but instead are considered claims that "should reasonably be known immediately upon the completion of trial." *Pizzuto v. State*, 127 Idaho 469, 903 P.2d 58, 61 (1995); *see also Paz v. State*, 123 Idaho 758, 852 P.2d 1355, 1356–57 (1993). This is true even if the capital defendant seeking review of his ineffective assistance of counsel claims is also represented by trial counsel during post-conviction proceedings. *See Paz*, 852 P.2d at 1357–58 & n. 3 (Bistline, J., dissenting).

Applying Idaho's forty-two day filing deadline to Hoffman's ineffective assistance of counsel claims raises fairness concerns similar to those posed by applying Georgia's statute of limitations to Reece's grand jury composition challenge. In Hoffman's case, the Idaho Supreme Court held that petitioner's ineffective assistance of counsel claims were procedurally barred because they were filed after the expiration of the state's forty-two day statutory deadline. The Idaho Supreme Court applied the rule despite the fact that Hoff-

exist for extending the time shall be in writing and shall be immediately reported to the supreme court, which shall at once independently consider the sufficiency of the circumstances shown and determine whether an extension of time is warranted. (9) When a judgment imposing the penalty of death is filed, the clerk and the reporter shall begin preparation of the transcripts of the trial, and other proceedings, and the clerk's transcript.

——

(11) Any successive petition for post-conviction relief not within the exception of subsection (5) of this section shall be dismissed summarily. Notwithstanding any other statute or rule, the order of dismissal shall not be subject to any motion to alter, amend or reconsider. Such order shall not be subject to any requirement for the giving of notice of the court's intent to dismiss. The order of dismissal shall not be appealable.

**12.** *Id.* at (4).

**13.** *Id.* at (5).

**14.** Currently, only California, Colorado, Idaho, and Texas have statutory schemes that require capital defendants to pursue simulta-

neously post-conviction and direct appeal claims in appealing to the state's highest court. *See infra* note 18. Similar statutes adopted in Florida, Missouri, and Pennsylvania have been invalidated. Florida's version of the unitary post-conviction-appellate statute, the Death Penalty Reform Act (DPRA), 2000 Fla. Sess. Law Serv. 00–3 (West), was struck down as unconstitutional under the state constitution by the Florida Supreme Court. *See Allen v. Butterworth*, 756 So.2d 52, 54 (Fla.2000) (stating that "although our holding is based on the separation of powers claim, we find that some sections of the DPRA also violate due process and equal protection"). Missouri's unitary system, codified in Mo. R.Crim. P. 24.035, 29.15, was amended on January 1, 1996, to provide for the filing of all post-conviction motions *"within ninety days after the date the mandate of the appellate court is issued."* Mo. R.Crim. P. 29.15(b) (West 2000) (emphasis added). The Pennsylvania Supreme Court struck down its version of the consolidated statute, the Capital Unitary Review Act, which was passed by the state's legislature in 1995. *See* 42 Pa. Cons. Stat. Ann. §§ 9571(b), 9577(a) (suspended by Order of Aug. 11, 1997). The court held that the statute violated the state's constitution by "directly conflicting with existing procedural rules." *See In re Suspension of Capital Uni-*

man continued to be represented by his original trial counsel during the forty-two day period.[15] *See also English,* 146 F.3d at 1260 (observing that ineffective assistance of counsel claims involve assertions of attorney incompetence that require a petitioner "to consult with different counsel on appeal in order to obtain an objective assessment of trial counsel's performance").

Significantly, both the Idaho Supreme Court and the Idaho legislature have since adopted new regulations designed to prevent this situation from recurring. In 1995, the Idaho Supreme Court promulgated Idaho Criminal Rule 44.2, which requires the trial court in a capital case to appoint at least one attorney other than trial counsel to represent the defendant in post-conviction proceedings. In the same year, the Idaho legislature enacted Idaho Code § 19–2719A, which permits the trial court to advise capital defendants that they are entitled to new counsel to pursue ineffective assistance of counsel claims at post-conviction proceedings.[16]

Idaho's forty-two day filing deadline, as applied to Hoffman, is uniquely harsh. Most states permit defendants to file petitions for post-conviction relief following the completion of their direct appeals.[17]

This bifurcated system allows for the appointment of new counsel, who can evaluate the record objectively to determine whether there are meritorious claims of ineffective assistance at trial and sentencing.

In Hoffman's case, the application of § 19–2719, which at that time did not provide for the appointment of independent counsel, permitted trial counsel to continue to represent him during post-conviction proceedings, which they did. As a result, Hoffman was deprived of counsel who could review the record objectively for ineffective assistance of counsel claims. Not surprisingly, Hoffman's trial counsel failed to raise and argue the issue of their own ineffectiveness in post-conviction proceedings. The practical reality, recognized by other states that employ the unitary post-conviction and appellate procedures [18]— and, ultimately, recognized by the state of Idaho itself [19]—is that "[i]t is the rare attorney who can be expected to contend on appeal that his representation was so poor that he deprived his client of a fair trial." *Ciak,* 59 F.3d at 303.

No allegation of ineffective assistance of counsel was made on Hoffman's behalf until 1995, when a successive petition for

---

*tary Review Act,* 554 Pa. 625, 722 A.2d 676, 680 (1999).

**15.** This was true of all indigent capital defendants in Idaho prior to 1995. Effective August 8, 1995, the Idaho Legislature amended Idaho Code § 19–2719 to require an "Inquiry Into the Need For New Counsel." The 1995 provision provides, in relevant part:

> After the imposition of a sentence of death, the trial judge should advise the defendant that, upon a particularized showing that there is a reasonable basis to litigate a claim of ineffective assistance of trial counsel, new counsel may be appointed to represent the defendant to pursue such a claim in a post-conviction proceeding.

Idaho Code § 19–2719A.

**16.** *See* 1995 Idaho Sess. Laws, ch. 140. The Idaho Supreme Court has yet to address the apparent conflict between Idaho Crim. R. 44.2 and Idaho Code § 19–2719A, although anecdotal evidence suggests that Idaho trial courts are applying Idaho Crim. R. 44.2.

**17.** *See supra* note 14.

**18.** Currently, only three other states—California, Colorado, and Texas—employ a unitary scheme consolidating the post-conviction and appellate procedures into a single petition for review by the state's highest court. Of these, the Colorado and Texas statutes provide for the replacement of trial counsel with a different attorney when a defendant indicates that he intends to pursue ineffective assistance of counsel claims in post-conviction proceedings. *See* Colo. R.Crim. P. 32.2(b)(3); Tex. Crim.App. R. for Appointment of Counsel under art. 11071, § 2(d) (adopted by per curiam order of August 2, 1999).

**19.** *Effective August 8, 1995, the Idaho Legislature amended Idaho Code § 19–2719 to require an "Inquiry Into the Need For New Counsel" where a capital defendant indicates that he wishes to raise claims of ineffective assistance of counsel. See Idaho Code § 19–2719(A) (1995) and supra note 11.*

post-conviction relief was filed by appointed counsel Peterson and Matthews, who replaced Hoffman's trial counsel. Peterson and Matthews investigated errors apparent from the record, and supplied the court with depositions and affidavits in which Hoffman's trial counsel admitted that they failed to: (1) obtain or review their client's educational, medical, or psychological records; (2) request a psychiatric evaluation of their client until after the trial despite awareness of his illiteracy, low intelligence, and psychological problems; and (3) follow up on the conclusion, stated in Dr. Sanford's report, that Hoffman suffered from possible brain damage.

Peterson and Matthews also investigated errors outside of the record, and supplied the court with depositions and affidavits in which trial counsel, neither of whom had previously tried a capital case, admitted that they had advised Hoffman to reject a plea of life in prison because they mistakenly believed, based on their misinterpretation of existing case law, that the Idaho death penalty statute would be found unconstitutional. Peterson and Matthews's petition was the first time that allegations documenting specific instances in which Hoffman's counsel had been ineffective had been presented to the state court.

As Peterson and Matthews's investigation shows, a claim of ineffective assistance of counsel requires review of the trial transcript and the entire record to determine the nature, frequency, and effect of counsel's errors. But Idaho Code § 19–2719 makes no provision for expedited delivery of trial transcripts to ensure that compliance with the forty-two day filing deadline does not deprive capital defendants of access to the complete record of their cases.[20] Indeed, the record indicates that

Hoffman's trial counsel prepared their post-conviction petition for relief without access to the trial transcript, which was completed on November 6, 1989, more than three months after the post-conviction petition was filed. Completion and service of the full record did not occur until late March of 1990, several months after the state court ruled to deny Hoffman's post-conviction petition.

The investigation conducted by Peterson and Matthews also shows that raising a claim of ineffective assistance of counsel requires that new counsel have the opportunity to conduct an investigation beyond the court records to uncover possible omissions made by trial counsel in the investigation and presentation of the case. See, e.g., Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir.1988) ("[I]neffectiveness claims are ordinarily inappropriate to raise on direct appeal because they ... cannot be made on the basis of the record[.]"); Cruz v. Warden, 907 F.2d 665, 670 (7th Cir.1990) ("An ineffective assistance claim alleging that counsel failed to prepare involves facts outside the trial record and presents a situation in which the Illinois courts will not invoke the res judicata or waiver doctrines.").

Hoffman's case involves allegations of ineffectiveness at trial, sentencing, and on appeal, stemming from counsel's legally inaccurate advice regarding the possibility that the death penalty would be imposed and counsel's failure to review educational, physical, and psychiatric records in order to present mitigating evidence. All of these allegations required investigation outside of the record at trial.

For the reasons outlined above, § 19–2719 effectively prevented Hoffman from

---

**20.** The only reference in Idaho Code § 19–2719 to the compilation of trial and sentencing records pending post-conviction proceedings states: "When a judgment imposing the penalty of death is filed, the clerk and the reporter shall begin preparation of the transcripts of the trial, and other proceedings, and the clerk's transcript." Idaho Code § 19–2719(9). The statute directs that preparation of the record begin immediately following the entry of a capital judgment, but provides no reciprocal mandatory date of completion.

timely raising his ineffective assistance of counsel claims.

### D. Evidentiary Hearing on Ineffective Assistance of Counsel Claims

Because the state court denied Hoffman's ineffective assistance of counsel claims without holding a hearing, and the Idaho Supreme Court and the federal district court affirmed the denial on procedural grounds, those claims have never been litigated on the merits. Without the benefit of an evidentiary hearing, it is impossible to evaluate the strength of Hoffman's defense at trial and sentencing. Therefore, we cannot conclude as a matter of law that there is no reasonable possibility that offering expert testimony and a thorough history of Hoffman's educational, medical, and psychological problems at the time of the murder might have reduced the likelihood that the death penalty would have been imposed. We therefore remand for an evidentiary hearing to develop a factual record regarding Hoffman's ineffective assistance of counsel claims. *See Siripongs v. Calderon*, 35 F.3d 1308, 1315–16 (9th Cir.1994); *Smith v. McCormick*, 914 F.2d 1153, 1170 (9th Cir.1990).

### III.

### Petitioner's Fifth and Sixth Amendment Rights During The Presentence Interview

Hoffman challenges the trial court's denial of his request to have counsel present during the presentence interview with the probation officer as a violation of his Fifth, Sixth, and Fourteenth Amendment rights. Hoffman contends that under *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the court may not, during the capital sentencing hearing, and when making the sentence determination, rely upon statements obtained through the custodial presentence interview without the aid of counsel. Although petitioner failed to raise this claim in his consolidated appeal to the Idaho

Supreme Court, the Idaho death penalty statute requires mandatory review of the entire record for sentencing errors. *See Beam v. Paskett*, 3 F.3d 1301, 1306–07 (9th Cir.1993), *overruled on other grounds by Lambright v. Stewart*, 191 F.3d 1181, 1185 (9th Cir.1999). All sentencing errors are treated as implicitly raised, removing the bar of procedural default. *See Beam*, 3 F.3d at 1306–07. The federal district court thus appropriately reached the merits of Hoffman's Fifth and Sixth Amendment *Estelle* claims. *See Hoffman*, 73 F.Supp.2d at 1203–07. The district court denied the claims by distinguishing Hoffman's case from *Estelle*, and held that the presentence interview is not a critical stage. *See id.* at 1207. Because we conclude that *Estelle* controls in the context of a capital case, we reverse.

In all capital cases, Idaho law requires a presentence investigation and report prior to the commencement of the sentencing hearing. *See* Idaho Code § 19–2515(c); *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983). The presentence report provides "crucial information" to the court, *Idaho v. Romero*, 116 Idaho 391, 396, 775 P.2d 1233 (1989), including information about the defendant's social history, educational background, "sense of values and outlook on life," and the "presentence investigator's analysis." I.C.R. 32. The trial court denied Hoffman's motion for counsel at the presentence interview, and the probation officer refused Hoffman's renewed requests for counsel during the interview itself. The trial court instructed the Deputy Attorney General to ensure that Hoffman was advised by the probation officer at the beginning of his presentence interview of his right to remain silent. *See Hoffman*, 73 F.Supp.2d. at 1206.

During the interview, Hoffman made a number of incriminating statements. He discussed the murder of Denise Williams with the probation officer and made multiple equivocal statements about his involve-

ment.[21] Hoffman conceded in the interview that he had known that Williams was an informant and that he did not think that what she did was right. Hoffman also told the probation officer that although he had recently found the "Lord," he had been previously living the life of a "demon." Most significantly, Hoffman admitted that he had been present at two unrelated murders and indicated that although he could have helped prevent these murders, he did not make any such attempt. The probation officer recommended in the presentence report to the trial court that Hoffman be sentenced to the "maximum punishment," which in this case was death.

 Idaho contends that applying *Estelle* to Hoffman's case would constitute a new rule in violation of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Once the state raises the *Teague* defense, we are compelled to address whether *Teague* applies before determining the merits of the claim. *See Caspari v. Bohlen*, 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). With few exceptions, the *Teague* non-retroactivity doctrine prohibits courts from announcing new rules of law in federal habeas proceedings.[22] *See, e.g., Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995). A decision announces a "new rule" if it "breaks new ground or imposes a new obligation." *Teague*, 489 U.S. at 301, 109 S.Ct. 1060. "To determine what counts as a new rule, *Teague* requires courts to ask whether the rule a habeas petitioner seeks

can be meaningfully distinguished from that established by binding precedent at the time his state court conviction became final." *Wright v. West*, 505 U.S. 277, 304, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (O'Connor, J., concurring). We consider the "legal landscape as it [ ] existed" on March 28, 1994, the date Hoffman's conviction and sentence became final.[23] *Caspari*, 510 U.S. at 390, 114 S.Ct. 948 (internal quotations omitted).

### A. Hoffman's Fifth Amendment Claim

 The Supreme Court decided *Estelle v. Smith* in 1981, over a decade before Hoffman's conviction became final. In *Estelle*, a Texas trial court sua sponte ordered the state's attorney to arrange a psychiatric evaluation of the defendant to determine the defendant's competency to stand trial. *See Estelle*, 451 U.S. at 456–57, 101 S.Ct. 1866. The defendant was found competent, and, after a jury trial, convicted of murder. *See id.* at 457, 101 S.Ct. 1866. As required by Texas law, a separate proceeding was then undertaken before the same jury to consider whether the defendant should receive the death penalty. *See id.* at 458, 101 S.Ct. 1866. During the sentencing hearing, the state offered the testimony of the court-appointed psychiatrist, who had interviewed the defendant solely for competency purposes, to establish the defendant's future dangerousness. The psychiatrist testified before the jury that the defendant "is a very severe sociopath," that "he will continue his previous behavior," that his condition will "only get worse," and that he "has no remorse or sorrow for what he has done."

---

**21.** When asked whether he was involved in William's murder Hoffman told the probation officer, "I'm not saying I'm not involved and I'm not saying I am involved." Hoffman would not answer yes or no to the probation officer's question about whether Hoffman was present at the time of the murder. The presentence report explains that Hoffman refused to answer no "because he could be lying."

**22.** The Supreme Court's plurality opinion delineated two exceptions to the non-retroactivi-

ty principle announced in *Teague:* (1) new rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," and (2) new rules involving procedures "implicit in the concept of ordered liberty." *Teague*, 489 U.S. at 307, 109 S.Ct. 1060 (internal quotations omitted).

**23.** The Supreme Court denied Hoffman's petition for certiorari on March 28, 1994. *See Hoffman v. Idaho*, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994).

**538**

*Id.* at 459–60, 101 S.Ct. 1866. After hearing the psychiatrist's testimony, the jury imposed the death penalty. *See id.*

The Supreme Court in *Estelle* concluded that the Fifth Amendment applied to the defendant's interview with the psychiatrist, when the incriminating statements made by the defendant formed the basis of the psychiatrist's testimony, which was considered by the jury in determining the sentence to be imposed on the defendant. *Id.* at 462–69, 101 S.Ct. 1866. The Supreme Court began its Fifth Amendment analysis by noting that "the availability of the ... [Fifth Amendment] privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." *Id.* at 462, 101 S.Ct. 1866 (citations omitted). The Supreme Court then found that the consequence at stake in capital sentencing, the "ultimate penalty of death," triggered the constitutional protection of the Fifth Amendment. *Id.* at 462–63, 101 S.Ct. 1866. "Just as the Fifth Amendment prevents a criminal defendant from being made 'the deluded instrument of his own conviction,' it protects him as well from being made the 'deluded instrument' of his own execution." *Id.* at 462, 101 S.Ct. 1866 (internal citations omitted).

One year later, this court concluded that under *Estelle*, the Fifth Amendment applied to inculpatory statements made during a presentence interview with a probation officer. *See Jones v. Cardwell,* 686 F.2d 754, 756 (9th Cir.1982) ("The reasoning that underlies the decision in *Estelle* supports application of the Fifth Amendment privilege to the sentencing procedures in the instant case."). We reasoned that although not

> every encounter between the state and a convicted but unsentenced defendant ·brings the Fifth Amendment privilege into play.... [W]here, as here, the state's agent seeks from the convicted defendant a confession of additional criminal activity and that confession is

used to enhance a defendant's sentence, we think it beyond peradventure that the defendant may properly claim the protection of the privilege against self-incrimination.

*Id.*

Hoffman's claim that his Fifth Amendment privilege applied during the presentence interview is controlled by the Supreme Court's ruling in *Estelle* that a capital defendant's inculpatory statements made during an interview with a psychiatrist are protected by the Fifth Amendment privilege, and this court's ruling in *Jones* that a defendant's inculpatory statements made during a presentence interview are protected by the Fifth Amendment when the statements may be used to increase the severity of sentencing. We therefore reject the government's argument that Hoffman's Fifth Amendment claim is barred by *Teague,* and proceed to consider the claim on the merits.

■■■ Hoffman's Fifth Amendment claim is undercut by the fact that Hoffman was advised that he could exercise his Fifth Amendment right to remain silent during the presentence interview. *See Hoffman,* 73 F.Supp.2d at 1206. Hoffman does not argue on appeal that the damaging statements made during the presentence interview were involuntary in violation of his Fifth Amendment privilege. *Cf. Jones,* 686 F.2d at 757 (holding statements involuntary where probation officer instructed defendant to answer all questions and questioned defendant about additional criminal activity). We conclude that although the Fifth Amendment privilege applies, it was not violated in the circumstance of this particular case.

*B. Hoffman's Sixth Amendment Claim*

■■■ The Sixth Amendment guarantees a criminal defendant "the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "[T]he Sixth Amendment right to counsel at-

taches 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *United States v. Harrison,* 213 F.3d 1206, 1209 (9th Cir.2000) (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). Hoffman's Sixth Amendment right to counsel attached before trial. *See Estelle,* 451 U.S. at 469–70, 101 S.Ct. 1866. Once the right has attached, the Sixth Amendment "is violated whenever the accused is denied counsel at a critical stage" of the adversary proceeding. *United States v. Bohn,* 890 F.2d 1079, 1080 (9th Cir.1989) (internal quotations omitted). The Supreme Court has long recognized sentencing as a critical stage. *See, e.g., Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) ("[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. . . . [T]he sentencing is a critical stage of the criminal proceeding at which [the defendant] is entitled to the effective assistance of counsel."). The issue in this case is whether the presentence interview conducted by a probation officer in preparation for the capital sentencing hearing constitutes a "critical stage" of the judicial proceedings.

▮ Hoffman again relies on *Estelle* for his claim that he was denied his Sixth Amendment right to counsel during the presentence interview. As set forth above, the Supreme Court held in *Estelle* that the defendant's right to counsel extended to an interview with a court-appointed psychiatrist prior to sentencing. 451 U.S. at 469–70, 101 S.Ct. 1866. The Court reasoned that the interview played a significant role in sentencing, and thus constituted a "critical stage" for the purpose of the Sixth Amendment analysis. *Id.* at 470–71, 101 S.Ct. 1866. Hoffman contends that *Estelle* governs his case, because like the defendant in *Estelle,* Hoffman faces sentencing, "literally a life or death matter," based on information gathered in an interview con-

ducted without the benefit of counsel. *See id.* at 471, 101 S.Ct. 1866.

The state argues that this court's decision in *Baumann v. United States,* 692 F.2d 565 (9th Cir.1982), forecloses the application of *Estelle* to presentence interviews in capital cases, and that any decision to the contrary would violate *Teague.* We read *Baumann* differently. The defendant in *Baumann* was sentenced to a five-year prison term on four counts of mail fraud. 692 F.2d at 569. Baumann relied on *Estelle* and challenged the lack of counsel during his presentence interview as a denial of his Sixth Amendment right. *Id.* at 574. We rejected Baumann's claim, declining to characterize a "routine" presentence interview as a critical stage. *Id.* at 578. We similarly rejected Baumann's Fifth Amendment claim that he was entitled to full Miranda warnings before submitting to a presentence interview. *Id.* at 576.

We reached our Fifth and Sixth Amendment conclusions in *Baumann* by distinguishing the capital bifurcated jury proceeding in *Estelle* from Baumann's "noncapital," "routine" sentencing. 692 F.2d at 576–78. We noted that the question of whether the defendant in *Baumann* was entitled to Fifth and Sixth Amendment protection during the noncapital presentence interview had some "similarity to the [question] advanced in Estelle," but read *Estelle* "narrowly" and found that the force of *Estelle*'s reasoning was "limited to the distinct circumstances of [ ] bifurcated capital proceedings." *Id.* at 575–76.

Our decision in *Baumann* not to apply the Fifth and Sixth Amendment rights to counsel to routine presentence interviews with probation officers rested on the "substantial difference[s]" in sentencing procedure and stakes between capital and routine cases. *See id.* at 576. By distinguishing the procedures required in capital presentence stages from those permitted in non-capital presentence interviews, *Baumann* joined a long line of cases re-

quiring heightened procedural safeguards in capital cases. *See Lankford v. Idaho,* 500 U.S. 110, 125–27, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (weighing the "special importance of fair procedure in the capital sentencing context" and holding that the lack of notice to the defendant of Idaho's intent to seek the death penalty violated Due Process); *Eddings v. Oklahoma,* 455 U.S. 104, 111, 113–15, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (discussing heightened protections in capital cases and reversing death sentence because the jury was not permitted to consider all of the capital defendant's mitigating character evidence); *Beck v. Alabama,* 447 U.S. 625, 637–38, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) (noting the Court's "often stated" principle that "there is a significant constitutional difference between the death penalty and lesser punishments," and overturning death sentence because the jury was not instructed on a lesser included noncapital offense); *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (finding that "the penalty of death is qualitatively different from a sentence of imprisonment," and therefore holding North Carolina's mandatory death penalty statute unconstitutional).

We also limited the holding of *Baumann* in federal cases in *United States v. Herrera–Figueroa,* 918 F.2d 1430 (9th Cir. 1991). In *Herrera–Figueroa* we exercised our supervisory power to require that probation officers permit defense attorneys to accompany defendants in all presentence interviews. *See id.*

▆▆▆▆ We find that a presentence interview in a capital case is a "critical stage" for the purpose of the Sixth Amendment's right to counsel. This conclusion is compelled by the principle from *Estelle* that defendants should not face presentencing

stages in capital cases without the benefit of counsel, and the *Baumann* distinction between capital and non-capital cases.[24] The presentence interview is a mandatory part of Idaho's capital sentencing scheme and forms the basis of the presentence report, considered by the court during sentencing. "Given the gravity of the decision to be made at the penalty phase, the State is not relieved of the obligation to observe fundamental constitutional guarantees." *Estelle,* 451 U.S. at 463, 101 S.Ct. 1866. The stakes for the defendant and for society are too high to allow defendants to face this important component of the sentencing process without the "guiding hand of counsel." *Id.* at 471, 101 S.Ct. 1866. We find that this conclusion is dictated by Supreme Court and Ninth Circuit precedent available at the time of Hoffman's conviction, and thus conclude that *Teague* does not apply.

▆▆▆▆ Turning to the merits of Hoffman's claim, we conclude that Hoffman was denied his Sixth Amendment right to counsel during the presentence interview. The next step of our analysis is to ask whether this constitutional violation is "harmless error." *Satterwhite v. Texas,* 486 U.S. 249, 256, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). We apply the standard from *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), to Hoffman's habeas petition, and ask whether Hoffman established that the "error had a substantial and injurious effect" on his sentence. *See Bains v. Cambra,* 204 F.3d 964, 977 (9th Cir.2000) (holding that the *Brecht* harmless error standard applies in all federal habeas corpus cases under § 2254).

▆▆▆▆ We cannot adequately evaluate the impact of Hoffman's incriminating statements made during the presentence interview without considering the full body

---

**24.** The State's reliance on *United States v. Benlian,* 63 F.3d 824 (9th Cir.1995) for the proposition that a presentence interview in a capital case is not a critical stage is equally unavailing. In *Benlian* we reiterated our

adherence to the *Baumann* holding in a *noncapital* case where the defendant waived the right to counsel. *See Benlian,* 63 F.3d. at 827.

of mitigating and aggravating evidence considered at sentencing. Hoffman's allegations of ineffective assistance of counsel at the trial and sentencing cast doubt over the reliability of this body of evidence; he alleges that damaging information would have been excluded and beneficial information admitted had he received effective assistance of counsel. If Hoffman proves these allegations at the ineffectiveness hearing, then Hoffman's statements made during the presentence interview, without the benefit of counsel, may be sufficiently damaging to constitute error. We therefore remand the question whether the denial of counsel at the presentence hearing constituted "harmless error" based, in part, on relevant evidence that may be developed at the hearing to determine whether Hoffman was denied effective assistance of counsel.

## IV.

### Application of the "Heinous, Atrocious or Cruel" Aggravating Factor

 Hoffman alleges that during sentencing the trial court relied upon an unconstitutionally vague aggravating factor, "that the murder was especially heinous, atrocious or cruel, manifesting exceptional depravity." Idaho Code § 19–2515(h)(5). Hoffman contends that the Idaho Supreme Court's construction of this factor fails to narrow sufficiently the sentencer's discretion as required by the Eighth and Fourteenth Amendments. He asserts that the "heinous, atrocious or cruel" aggravating factor fails to pass constitutional muster for the same reasons that the United States Supreme Court found Oklahoma's "especially heinous, atrocious, or cruel" aggravating factor invalid in *Maynard v.*

*Cartwright,* 486 U.S. 356, 363–64, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). We do not reach the merits of this claim because we conclude that the trial court's consideration of the challenged sentencing factor would constitute harmless error, assuming that the factor is unconstitutional.

 The appropriate remedy for reliance upon an unconstitutional aggravating factor depends in part on whether the state statute is a weighing or non-weighing statute.[25] Generally, in states with non-weighing schemes, reviewing courts may affirm the sentence if other valid aggravating factors remain. *See Williams v. Calderon,* 52 F.3d 1465, 1477 (9th Cir.1995); *cf. Tuggle v. Netherland,* 516 U.S. 10, 13–14, 116 S.Ct. 283, 133 L.Ed.2d 251 (1995) (clarifying that this rule does not permit affirmance in cases where the constitutional taint of the illegitimate factor infects the other factors). A court reviewing a sentence imposed under a weighing scheme must conduct constitutional harmless-error analysis or require a reweighing. *See Williams,* 52 F.3d at 1477.[26]

At the time of Hoffman's conviction, the Idaho death penalty statute required the sentencing court to weigh the aggravating circumstances against the mitigating circumstances. *See Williams,* 52 F.3d at 1478 n. 13 ("Idaho has been treated as a weighing state because of the explicit procedural constraint."); *Beam v. Paskett,* 3 F.3d 1301, 1310 n. 10, *overruled on other grounds by Lambright v. Stewart,* 191 F.3d 1181 (9th Cir.1999) (noting that Idaho statute requires courts to weigh each aggravating factor against all mitigating factors). We therefore apply harmless-error analysis and ask whether the allegedly invalid aggravating factor had a "substantial

**25.** A weighing statute requires the decision maker to weigh the mitigating evidence against the statutory aggravators in order to impose the death penalty; a non-weighing statute requires a threshold finding of an aggravator and then instructs the decision-maker to weigh all relevant evidence. *See, e.g., Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

**26.** In contrast, "when the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale." *Stringer,* 503 U.S. at 232, 112 S.Ct. 1130.

and injurious effect or influence" on the court's determination. *Williams,* 52 F.3d at 1476.

The trial court in Hoffman's case independently weighed the mitigating evidence against two statutory aggravating circumstances: one, the unchallenged circumstance, the victim's status as a potential witness in a legal proceeding, and two, the challenged heinous, atrocious, and cruel circumstance. *See* Idaho Code § 19–2515(h)(5) and (10). The court determined that each aggravating circumstance, standing alone, outweighed the mitigating evidence. We conclude that any error that arose from the court's consideration of the heinous, atrocious and cruel aggravating factor did not affect the court's determination, and constitutes harmless error.

## V.

### Hoffman's Claim That the Jury Should Determine the Presence of Aggravating Circumstances

RONALD M. GOULD, Circuit Judge, with whom W. FLETCHER, Circuit Judge, concurs:

We concur in Judge Pregerson's opinion as to Parts I through IV. However, we deliver the opinion of the court as to Part V.

█ Hoffman argues that in light of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Idaho's capital sentencing statute unconstitutionally deprives him of the right to have a jury—rather than a judge—determine the presence of an aggravating circumstance, a determination that could result in a sentence of death. In *Apprendi,* the Supreme Court announced a general rule that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362–63. Hoffman contends that the presence of an aggravating circumstance should be treated as an element of a capital case to

be decided by the jury rather than as a factor in sentence enhancement to be decided by the judge.

In *Walton v. Arizona,* the Supreme Court addressed a similar sentencing scheme and held that the presence of an aggravating circumstance in a capital case may constitutionally be determined by a judge rather than a jury. 497 U.S. 639, 647–48, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). The Supreme Court in *Apprendi* did not overrule *Walton.* It wrote:

> Finally, this Court has previously considered and rejected the argument that the principles guiding our decision today render invalid state capital sentencing schemes requiring judges, after a jury verdict holding a defendant guilty of a capital crime, to find specific aggravating factors before imposing a sentence of death.

*Apprendi,* 120 S.Ct. at 2366 (citing *Walton,* 497 U.S. at 647–49, 110 S.Ct. 3047; *Id.* at 709–14, 110 S.Ct. 3047 (Stevens, J. dissenting)).

We are aware that four dissenting Justices in *Apprendi* asserted that *Apprendi* effectively overruled *Walton,* and that one concurring Justice stated that *Walton* could be reexamined on "another day." But while *Apprendi* may raise some doubt about *Walton,* it is not our place to engage in anticipatory overruling. The Supreme Court has specifically directed lower courts to "leav[e] to this Court the prerogative of overruling its own decisions." *Agostini v. Felton,* 521 U.S. 203, 207, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (citing *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)). We therefore conclude that *Walton* forecloses Hoffman's *Apprendi*-based challenge to Idaho's capital sentencing scheme.

## VI.

### CONCLUSION

We REMAND to the district court for an evidentiary hearing on petitioner's inef-

fective assistance of counsel claims in accordance with this opinion. We REVERSE the district court's ruling that the Fifth and Sixth Amendments did not apply to petitioner's presentence interview, and defer judgment whether the denial of counsel during petitioner's presentence interview constitutes harmless error until after the ineffective assistance of counsel hearing. We AFFIRM the district court's denial of all other claims.

PREGERSON, Circuit Judge, concurring separately in the result of Part V:

I respectfully disagree with the majority's conclusion that *Walton* forecloses Hoffman's *Apprendi*-based challenge to Idaho's capital sentencing scheme.

The specific question whether the presence of an aggravating circumstance in a capital case is a matter to be determined by a jury was answered in the negative by the Supreme Court in *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), which was decided ten years before *Apprendi.* Resolution of Hoffman's claim thus requires consideration of the present viability of *Walton* in light of *Apprendi,* and analysis of whether the holding of *Apprendi* extends to the determination of an aggravating circumstance under Idaho's capital sentencing scheme.

Idaho argues that Hoffman's *Apprendi* claim was procedurally defaulted because he failed to exhaust this claim in state court, or alternatively, that requiring a jury to determine the presence of the statutory aggravating circumstance would impose a new rule in violation of *Teague.* Although the *Apprendi* claim may have

been procedurally defaulted,[27] Idaho's capital appellate sentencing statute requires mandatory review of the entire record for sentencing errors by the Idaho Supreme Court. *See* Idaho Code § 19–2827; *Beam v. Paskett,* 3 F.3d 1301, 1306 (1993), *overruled on other grounds by Lambright v. Stewart,* 191 F.3d 1181 (9th Cir.1999). Sentencing errors are thus treated as implicitly raised, removing the bar of procedural default. *Id.* As discussed below, I would find that requiring a jury to determine beyond a reasonable doubt the presence of aggravating circumstances in a capital case constitutes a new rule. I would conclude, however, that it falls within one of the two exceptions to the *Teague* non-retroactivity doctrine and would therefore consider the *Apprendi* claim on the merits.

### A. *Idaho's First Degree Murder Statute*

Before 1977, Idaho law imposed the death penalty for all first degree murder convictions. *See* Idaho Code § 18–4004 (1976) ("[e]very person guilty of murder in the first degree shall suffer death"). After the Supreme Court invalidated North Carolina's mandatory death penalty statute in *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), the Idaho Supreme Court held that the Idaho first degree murder statute was unconstitutional. *See State v. Lindquist,* 99 Idaho 766, 768, 589 P.2d 101 (1979) (noting that the Idaho statute was "virtually identical" to the North Carolina statute). The Idaho legislature responded to *Woodson* by making two critical statutory changes: first, the legislature changed the language of § 18–4004 to allow for the option of death or life imprisonment;[28] second, the legisla-

---

27. Hoffman filed a motion before sentencing with the trial court to "have a jury empaneled for the purpose of sentencing, or in the alternative, to serve in an advisory capacity to the trial court." *See State of Idaho v. Hoffman,* 123 Idaho 638, 643, 851 P.2d 934 (1993). The trial court denied the motion, and Hoffman appealed the denial in his consolidated appeal to the Idaho Supreme Court. *Id.* The Idaho Supreme Court ruled that the Idaho

Constitution does not require that a jury rather than a judge determine sentencing. *Id.* Because Hoffman appears to have raised the right to a jury trial on state constitutional grounds alone, the federal grounds arguably were defaulted.

28. The amended statute remains the same today. *See* Idaho Code § 18–4004 ("Punishment for murder. Subject to the provisions

ture amended § 18–4004 to incorporate a new statutory section. Under this new section, § 19–2515, the trial judge, before the death penalty can be imposed, is required to find the presence of a statutory aggravating circumstance and then determine that the aggravating circumstance outweighs any mitigating evidence. *See id.*

As a result of the 1977 statutory changes, a capital defendant's conviction and imposition of the death sentence by the judge occur in two stages. First, Idaho must obtain a first degree murder conviction from the *jury* by proving beyond a reasonable doubt that the defendant committed one of the crimes enumerated in Idaho Code § 18–4003(a–f).[29] Second, the jury having found the defendant guilty of first degree murder, the *judge* must hold a separate sentencing hearing. Based on the evidence presented at the hearing, the judge must: (1) find beyond a reasonable doubt that at least one of ten enumerated aggravating circumstances is present; and then (2) determine that the aggravating circumstance(s) outweigh(s) any mitigating evidence. If the state fails to persuade the trial judge beyond a reasonable doubt of the existence of an aggravating circumstance, the defendant cannot be sentenced to death. Idaho Code § 19–2515(h). "Where a person is convicted of an offense which may be punishable by death, a sentence of death shall not be imposed unless the court finds at least one statutory aggravating circumstance." Idaho Code § 19–2515(f).

In accordance with its statutory scheme, Idaho charged Hoffman with first degree murder on the ground that the murder was perpetrated by willful, deliberate, and premeditated killing. *See* Idaho Code § 18–4003(a). The jury returned a verdict of guilty on the first degree murder charge. The trial judge then conducted a sentencing hearing without a jury, at which witnesses and the defendant testified. The judge found the presence of two statutory aggravating circumstances in Hoffman's case, determined that they outweighed the mitigating evidence, and imposed the death sentence.

### B. *Apprendi v. New Jersey*

The Supreme Court in *Apprendi* considered a challenge to a New Jersey hate crime statute. The statute required the trial judge to determine at sentencing if the crime was motivated by "a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." *Apprendi,* 120 S.Ct. at 2351 (quoting N.J. Stat. Ann. § 2C: 44–3(e) West Supp.2000). If the court made such a statutory finding, it could impose an "expanded" prison term. *Id.* The hate crime statute thus permitted the judge to impose an additional term of imprisonment beyond the maximum sentence prescribed for the offense for which the defendant was convicted. *Id.*

Although the New Jersey Supreme Court characterized the hate crime enhancement as a "sentencing factor," the Supreme Court held that the enhancement

of § 19–2515, Idaho Code, every person guilty of murder of the first degree shall be punished by death or by imprisonment for life.").

**29.** Idaho Code § 18–4003 defines the following offenses as first degree murder: murder perpetrated by means of poison, lying in wait, torture; murder perpetrated by willful, deliberate and premeditated killing; murder of any peace officer, executive officer, officer of the court, fireman, judicial officer or prosecuting attorney; murder committed by a person under a sentence for murder of the first

or second degree; murder committed in the perpetration of or attempt to perpetrate, aggravated battery on a child under 12 years of age, arson, rape, robbery, burglary, kidnaping or mayhem; any murder committed by a person incarcerated in a penal institution upon a person employed by the penal institution, another inmate of the penal institution or a visitor to the penal institution; any murder committed by a person while escaping or attempting to escape from a penal institution. Idaho Code § 18–4003(a)–(f).

was *an element of the offense,* which should have been considered by the jury. *Id.* at 2353, 2363.[30] The Supreme Court concluded that all facts which increase the penalty beyond the prescribed statutory maximum must be found by a jury to exist beyond a reasonable doubt.[31] *Id.* at 2363 ("It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.") (quoting *Jones,* 526 U.S. at 252–53, 119 S.Ct. 1215 (Stevens, J. concurring)).

The Supreme Court provided clear instructions for distinguishing sentencing factors from elements of an offense: "the relevant inquiry is not one of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 2365. The Court applied the test to the New Jersey hate crime statute, and found that the hate crime

enhancement turned a second degree offense into a first degree offense. *Id.*

Under Idaho's death penalty scheme, a defendant is not actually "death-eligible" after a jury convicts him of first degree murder.[32] Rather, at the conclusion of the first degree murder conviction, the defendant is only eligible for a sentence of life imprisonment. Idaho Code § 19–2515(c). The defendant is not death-eligible until the trial judge finds the presence of an aggravating circumstance. *Id.* If the trial judge finds an aggravating circumstance, the judge then has the task of weighing the statutory aggravating circumstance against all of the mitigating evidence to determine if the defendant should receive life in prison or the death penalty. *Id.*

Just as the presence of the hate crime enhancement transformed a second degree offense sentence into a first degree offense sentence under the New Jersey hate crime statute, the presence of an aggravating circumstance here transforms a life sentence into a potential death sentence under the Idaho death penalty scheme. There can be no doubt that a death sentence is

**30.** *Apprendi* extended the Court's previous ruling in *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In *Jones,* the Court held that the provisions of a federal car jacking statute that permitted the imposition of greater penalties are elements of the offense, and require a jury to determine the underlying facts. *See Jones,* 526 U.S. at 252, 119 S.Ct. 1215. The Court found that a contrary interpretation would raise constitutional questions, because the Fifth and Sixth Amendments require submission to the jury of facts that increase the punishment beyond that authorized by the statute. *Id.* at 240–49, 119 S.Ct. 1215.

**31.** The Supreme Court qualified this holding by declining to overrule *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). *Apprendi,* 120 S.Ct. at 2355. In *Almendarez–Torres,* the Supreme Court considered the statutory scheme for sentencing aliens once deported who return to the United States without permission. Although the general penalty for violating the applicable statute is two years of incarceration, the statute authorizes an additional prison term of up to twenty years for aliens who were removed subsequent to a felony conviction. *Almendarez–Torres,* 523 U.S. at 226,

118 S.Ct. 1219. The Supreme Court found that the provision authorizing the additional prison term was a penalty provision, rather than a separate crime, and therefore concluded that the indictment did not need to list the prior conviction as an element of the offense. *Id.* The Supreme Court described this holding as "at best, an exceptional departure." *Apprendi,* 120 S.Ct. at 2361. In *Apprendi,* the Court noted that "it is arguable that *Almendarez–Torres* was incorrectly decided," and stressed the fact that the petitioner in *Almendarez–Torres* did not contest the underlying convictions. *Id.*

**32.** As discussed earlier, the first degree murder conviction alone does not sufficiently guide the discretion of the sentencer to allow for the imposition of the death penalty. *See, e.g., State v. Lindquist; see also Woodson v. North Carolina,* 428 U.S. 280, 303, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)("North Carolina's mandatory death penalty statute provides no standards to guide the jury in its inevitable exercise of the power to determine which first-degree murderers shall live and which shall die.")

an increased penalty beyond life imprisonment. It is equally clear that the presence or absence of an aggravating circumstance is a factual determination. I would therefore conclude that the determination of the presence or absence of an aggravating circumstance in a capital case is a factual determination that increases the potential sentence from life imprisonment to capital punishment, and thus must be submitted to the jury under *Apprendi*. By allowing the judge to determine facts that increased the potential penalty from life imprisonment to death, Idaho Code § 19–2515 deprived Hoffman of his right to a jury trial in violation of the Sixth and Fourteenth Amendments.

### C. Walton v. Arizona

The Supreme Court rejected a similar challenge to the trial judge's role in a state capital sentencing scheme in *Walton v. Arizona*, 497 U.S. 639, 649, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).[33] In *Walton*, the Court held constitutional a statutory scheme in Arizona that permitted the trial judge, rather than a jury, to find the presence of aggravating circumstances. In dissent, Justice Stevens argued that the presence of aggravating circumstances functioned as a necessary element of a death sentence and required a jury trial. *See id.* at 709, 110 S.Ct. 3047 (Stevens, J., dissenting).

The Supreme Court in *Apprendi* was divided over whether *Walton* survives *Apprendi*. The majority opinion, written by Justice Stevens and joined by Justices Scalia, Souter, Thomas, and Ginsburg, distinguished *Walton* from *Apprendi*. *See Apprendi*, 120 S.Ct. at 2366. The majority opinion in *Apprendi*, referring to *Walton*,

suggested that under the bifurcated Arizona scheme, the defendant was "death-eligible" once the jury found him guilty of first degree murder. *Id.* (describing *Walton* as holding that "once a jury has found the defendant guilty of all the elements of an offense which carries as its maximum penalty the sentence of death, it may be left to the judge to decide whether that maximum penalty, rather than a lesser one, ought to be imposed") (quoting *Almendarez–Torres*, 523 U.S. at 257, n. 2, 118 S.Ct. 1219. (Scalia, J. dissenting)).

The concurring opinion of Justice Thomas acknowledged the tension between *Walton* and *Apprendi*, but found that it was "a question for another day." *See id.* at 2380.

Dissenting Justices O'Connor, Rehnquist, Kennedy, and Breyer argued that *Apprendi* directly conflicts with *Walton*:

> The distinction of *Walton* offered by the Court today is baffling, to say the least. The key to that distinction is the Court's claim that, in Arizona, the jury makes all of the findings necessary to expose the defendant to a death sentence. As explained above, that claim is demonstrably untrue. A defendant convicted of first-degree murder in Arizona cannot receive a death sentence unless a judge makes the factual determination that a statutory aggravating factor exists. Without that critical finding, the maximum sentence to which the defendant is exposed is life imprisonment, and not the death penalty.

*Id.* at 2388 (O'Connor, J., concurring) (internal citations omitted).

Thus, it appears that four justices considered *Walton* to survive *Apprendi*,[34] one

---

**33.** The Supreme Court granted certiorari in *Walton* because the Ninth Circuit ruled en banc in *Adamson v. Ricketts*, 865 F.2d 1011 (1988), that the Arizona death penalty was unconstitutional on the same grounds asserted by Walton. *See Walton*, 497 U.S. at 647, 110 S.Ct. 3047.

**34.** Included in this count is Justice Stevens, the author of *Apprendi*. It is questionable,

however, whether Justice Stevens considers *Walton* still good law, given his concurring opinion in *Jones v. United States*. In *Jones*, Justice Stevens explained that "in [his] view, a proper understanding of this principle [that it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties] encompasses ... facts that must be established before a defendant may be put to

justice deferred the question, and four justices expressed the view that *Apprendi* overruled *Walton.* In the absence of a majority position about the continued viability of *Walton,* I turn for guidance to the Court's reasoning in *Apprendi.*

The reasoning of *Apprendi,* that any assessment of facts that increases the maximum penalty must be submitted to the jury and proved beyond a reasonable doubt, persuades me that a jury must find the presence of an aggravating circumstance beyond a reasonable doubt before a death sentence can be inflicted upon a defendant convicted of first degree murder under Idaho's bifurcated statutory scheme.

### D. The Teague Non–Retroactivity Exception for Watershed Rules of Criminal Procedure

*Apprendi,* and its precursor, *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), were both decided after Hoffman's conviction became final. Under *Teague,* Hoffman, as a petitioner in a federal habeas proceeding, cannot receive the benefit of a new rule of law unless the rule falls within one of two exceptions. The requirement that the jury rather than the trial judge determine the presence of a statutory aggravating factor in a capital case before a death sentence can be imposed is a new rule of law which cannot be applied to this case unless the rule falls within one of the two *Teague* exceptions.

The Supreme Court in *Teague* recognized an exception, frequently referred to as the "second exception," relevant in this case, for "those watershed rules of criminal procedure" that "alter our understanding of the bedrock procedural elements

essential to the fairness of a proceeding." *Sawyer v. Smith,* 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (quoting *Teague* ).[35] Thus, the question in Hoffman's case is whether extending *Apprendi* to the determination of an aggravating circumstance in a death penalty case constitutes a fundamental rule of criminal procedure sufficient to satisfy the second exception.

Since the Supreme Court decided *Teague* a decade ago, federal courts have struggled to discern the meaning of this second exception. *See Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) ("[T]he precise contours of this exception may be difficult to discern."); *Gaines v. Kelly,* 202 F.3d 598, 604 (2d Cir.2000) (describing the scope of the second exception as a "difficult question" unaided by the "relatively sparse guidance" of the Supreme Court). Despite ambiguity over the definition, courts have applied the second exception to a range of constitutional rules of criminal procedure. *See, e.g., Ostrosky v. Alaska,* 913 F.2d 590, 594–95 (9th Cir.1990) (announcing a new due process rule concerning mistake of law defenses and finding that the rule falls within the *Teague* exception for "procedures implicit in the concept of ordered liberty" ); *Hall v. Kelso,* 892 F.2d 1541, 1543 n. 1 (11th Cir.1990) (finding as an exception the rule announced in *Sandstrom v. Montana* regarding burden shifting instructions); *Graham v. Hoke,* 946 F.2d 982, 994 (2d Cir.1991) (finding as an exception the rule announced in *Cruz,* that non testifying codefendant's confession may not be admitted); *Williams v. Dixon,* 961 F.2d 448, 454–56 (4th Cir.1992) (finding as an exception the *Mills* rule striking the unanimity requirement in jury findings of mitigating evidence); *Gaines,* 202 F.3d

death." *Jones,* 526 U.S. at 253, 119 S.Ct. 1215. Justice Stevens continued, "[i]f ... the Court's opinion in *Walton v. Arizona* departed from that principle, as I think [it] did, [it] should be reconsidered in due course." *Id.* (internal citations omitted).

**35.** The Court described two categorical exceptions in Teague: (1) rules that place pri-

mary individual conduct outside of the power of criminal law to proscribe, and (2) watershed rules of criminal procedure. *Teague,* 489 U.S. at 307, 109 S.Ct. 1060. The "watershed rules of criminal procedure" is thus sometimes referred to as the "second exception" to *Teague.*

at 604 (finding as an exception the *Cage* rule that describing reasonable doubt in terms of grave or substantial uncertainty and requiring a "moral certainty" violates due process).

I would find that the issue at stake in this case—the right to have a jury determine facts that increase the potential penalty from life imprisonment to death—is the kind of fundamental rule of criminal procedure that should be applied retroactively under the second *Teague* exception. The Supreme Court announced in *Apprendi* that "[a]t stake in this case are constitutional protections of surpassing importance." *Apprendi,* 120 S.Ct. at 2355. The Court characterized the right to a jury trial of every element of the offense and the standard of proof, beyond a reasonable doubt, as "basic principles" of our legal system, noting

> there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof.

*Id.* at 2359, 2366.

I would adhere to the Supreme Court's characterization of the rule at stake in *Apprendi* and find that the right to a jury determination of an element of capital murder, the presence of an aggravating circumstance, is a "bedrock right" within the meaning of the second *Teague* exception. I would thus apply the rule announced in *Apprendi* to Hoffman's case and find that he was denied his Sixth and Fourteenth Amendment due process right to a jury trial when the trial judge, rather than the jury, found the presence of the statutory aggravating circumstances, necessary to the imposition of the death penalty.

#### E. Harmless Error

Although I conclude that Idaho Statute § 19–2515 unconstitutionally requires the judge rather than the jury to find the presence of aggravating circumstances, the error appears harmless in Hoffman's case. *See Satterwhite,* 486 U.S. at 256, 108 S.Ct. 1792. The error is harmless unless the trial judge's determination of the presence of the aggravating circumstance had a "substantial and injurious effect" on Hoffman's sentence. *See Bains,* 204 F.3d at 964.

The trial judge found that the aggravating circumstance, that the victim was a witness or a potential witness in a legal proceeding, was proved beyond a reasonable doubt. At no point during the trial, sentencing proceeding, or appeal process has Hoffman contested that the victim was a witness or potential witness.

Given the fact that there is no dispute that the aggravating circumstance was present, I would not find that Hoffman's sentence was adversely affected by the fact that the trial judge, rather than the jury, made this determination. Accordingly, I would conclude that the trial judge's determination of the presence of the aggravating circumstance in this case is harmless error.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.